# CHARLESTON.

CLIFFORD B. RIGGS, *Adm'r,* WILLIAM RIGGS, *Deceased, v.*
THE WEST PENN PUBLIC SERVICE COMPANY

(No. 5756)

Submitted November 22, 1927. Decided March 20, 1928.

STREET RAILROADS—TRIAL—*Where Evidence is Insufficient to Support Recovery on Any Theory, Verdict Should be Directed for Defendant; in Action for Death of Automobilist in Collision With Street Car, Evidence Held Insufficient to go to Jury Under Doctrine of Last Clear Chance.*

Where the evidence is insufficient to support a recovery in favor of the plaintiff on any theory of the case, the trial court should direct a verdict in favor of the defendant.

(Street Railroads, 36 Cyc. p. 1631; Trial, 38 Cyc. p. 1580.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

WOODS, JUDGE, dissenting.

Error to Circuit Court, Wood County.

Action by Clifford B. Riggs, administrator of William Riggs, deceased, against the West Penn Public Service Company. Judgment for defendant, and plaintiff brings error.

*Affirmed.*

*B. M. Whaley* and *C. M. Hanna,* for plaintiff in error.

*K. C. Moore* and *Robert B. McDougle,* for defendant in error.

LITZ, JUDGE:

Clifford B.- Riggs, as administrator of his father, W. M. Riggs, deceased, prosecutes error to judgment of the circuit court entered on a directed verdict in favor of Monongahela West Penn Public Service Company, a corporation, in an action of trespass on the case for alleged wrongful death of decedent, resulting from a collision between a Ford coupe automobile operated by Clifford B. Riggs, in which W. M. Riggs was riding, and a street car owned and operated over its electric railway by the defendant.

The accident occurred on the afternoon of August 15, 1925, in North Parkersburg (outside the city limits), Wood County, at the intersection of West Virginia and Hemlock Avenues. West Virginia Avenue, over which the automobile was traveling, is eighty feet wide with a twenty foot concrete strip in the center which had been opened to traffic for the first time that day. Hemlock Avenue, along the center of which the defendant maintains its electric railway, is a dirt street fifty feet wide, crossing West Virginia Avenue at right angles. Clifford Riggs and his father for several days previous to the accident had been painting a house in the vicinity of the crossing. ·On quitting work about 4:00 P. M., they placed some cans of paint in the automobile (belonging to Clifford and his brother), and started home. After reaching West Virginia Avenue, about six hundred feet from the crossing, they continued their course over the concrete surface to the point of accident at the rate of about fifteen miles per hour, according to the testimony of Clifford, who denies previous knowledge of the crossing and further testifies that he first became aware of the street car at the very moment of the collision. There was no crossing sign; and the track was partially hidden by the concrete surface of the street. Several witnesses for the defendant testified that the automobile was traveling about twenty-five miles an hour, and that both

occupants, as it neared the crossing, were looking in the direction opposite the approaching street car; that the whistle on the street car was blown, but the only one testifying concerning the location of the street car at the time fixes it as 146 feet from the center of the crossing. There is evidence also that the whistle was blown immediately before the collision. According to the motorman's testimony he "blew for West Virginia Avenue", and also when he was "approaching the automobile"; that he was about "seventy feet or maybe a little more" from the center of the crossing, traveling at the rate of twenty to twenty-five miles an hour, when he saw the automobile a little farther from the crossing, approaching at the rate of thirty to thirty-five miles an hour; that the street car (44.8 feet long and weighing 49,000 lbs.), at the rate of speed it was moving, could not have been stopped within less than 150 feet; that on observing the automobile he applied the emergency brakes, "the quickest thing I could do and about the best I could do"; and that the front end of the car was 84.8 feet beyond the crossing when it stopped. Witnesses for the plaintiff deny that the whistle was blown for the crossing.

Granting, but not deciding, that the issue as to whether or not the defendant failed to give proper crossing signals, was a jury question, W. M. Riggs, in our opinion, was guilty of contributory negligence in failing to observe the crossing and warn the driver of the danger in time to avoid the accident. He had resided for several months within a few hundred feet of the crossing. On the day of the accident in going to and from his work had crossed the railway three times within a block, and in plain view, of the point of accident. No evidence whatever is offered to rebut the presumption of knowledge on his part arising from these and other facts and circumstances. He was sitting on the side of the automobile facing the approaching street car, and therefore, in a better position than the driver to see it. *Jameson* v. *N. & W. Ry.* Co., 97 W. Va. 119.

The remaining question for consideration is whether or not the case should have been submitted to the jury under the last clear chance doctrine.

"The law exacts a high degree of care of a motorman upon discovery of peril to persons or property at a public crossing, measured by the duty to protect life, and property; he should be watchful, alert, and capable, and must promptly use all means known to persons of skill in his position to avoid accident." *Mobile Light & R. Co.* v. *Gadik*, 211 Ala. 582, 100 So. 837.

"Among the new duties enjoined upon the employes of a railroad under the last chance doctrine, after discovering the peril of a driver of an automobile who is about to attempt a crossing in front of a train, are the use of danger signals such as the continuous ringing of the bell, blowing the whistle, and also checking the speed of the train. It is, therefore, not always necessary to show that a train could have been stopped by the operatives by the exercise of ordinary care to invoke the humanitarian doctrine, since a failure to stop, slow down, or give warning signals may be sufficient for that purpose. Thus, while an automobile approaching a street car crossing at a safe distance at the usual speed does not suggest peril, if it continues to approach without slowing up or the driver is seen to be inattentive, the motorman's duties to avoid a collision begin; his duty to give a warning signal being urgent if the driver appears inattentive, *and more imperative if he sees he cannot stop short of a collision.*" 2 Blashfield Cyc. Auto. Law, p. 1301, sec. 24; 3 Elliott on Railroads, 3d ed., sec. 1542, p. 333.

"Under the humanitarian rule, if the operator of a car sees one in peril, and oblivious thereof, then he is required to use any and all means at his hand to avert the injury of such person. If he can stop his car, he must stop. If the slackening of speed, although unable to stop, will avert the injury, he must do that. *If a warning will avert the injury ordinary care requires that of such operator.*" *Graupner* v. *Wells*, 214 Mo. App. 163, 260 S. W. 521.

"Plaintiff's negligence in failing to observe the approaching car would not excuse defendant from the duty of exercising reasonable care to avoid doing her injury. If the motorman saw plaintiff in her perilous situation, or if he could have seen her by the exercise of reasonable caution, and could

thereafter have avoided the accident by *sounding the alarm,* or by checking the speed of the car, and failed to do so, then his failure to do so was a supervening independent act, or acts, of negligence which were the proximate cause of plaintiff's injury." *Riedel* v. *Traction Co.,* 69 W. Va. 18, 21.

As the motorman on discovery of the automobile realized the peril of its occupants and knew that he could not stop the street car short of the Crossing, I think the jury should have been permitted to say whether or not he was negligent in attempting to stop the street car before giving a signal too late for the driver of the automobile to avert the tragedy by stopping, checking, or diverting the course of the machine. The court, however, is of the opinion that he did all that was required under the circumstances, and that there is no liability against the defendant. Where the evidence is insufficient to support a recovery in favor of the plaintiff on any theory of the case, the trial court should direct a verdict in favor of the defendant. *Draper* v. *Mercer Hdwe. & Furn. Co.,* 104 W. Va. 144, 139 S. E. 645.

The judgment of the circuit court is therefore affirmed.

*Affirmed.*