## JOSEPH BLANCHETTE

### *vs.*

## WATERVILLE, FAIRFIELD & OAKLAND RAILWAY.

### Kennebec.   Opinion February 4, 1927.

*In an action of tort for injury sustained by plaintiff, it is not enough that negligence of the defendant is shown. It must also appear that plaintiff was free of contributory negligence.*

In the instant case from the evidence there is but one rational inference to be drawn, and that is that the plaintiff by his own negligent conduct helped to bring on the accident.

The principle of the last clear chance does not apply in this case for the reason that, if the defendant were guilty of negligence, it was not subsequent to and independent of the plaintiff's contributory negligence, as the contributory negligence of the plaintiff was operative to the moment of the accident.

In this case it is apparent that the jury failed to understandingly analyze the evidence on the one side and the other, with reference to the burden of proof, or failed to appreciate the duty of the plaintiff, or were influenced by prejudice or emotion in rendering a verdict.

On general motion for new trial by defendant.   An action of tort to recover damages for personal injuries and damage to property resulting from a collision on Water street in Waterville on October 3, 1925, between a motor truck owned and operated by plaintiff and a trolley car of defendant company.   A verdict of $400 was rendered for plaintiff and defendant filed a general motion for a new trial.

Motion sustained.   New trial granted.

The case is fully stated in the opinion.

*F. Harold Dubord,* for plaintiff.

*Perkins & Weeks,* for defendant.

SITTING:   WILSON, C. J., PHILBROOK, DUNN, BARNES, BASSETT, JJ.

DUNN, J.   On motion by the defendant to set aside the verdict, the grounds pressed being that the verdict is counter to facts and law.

The action is of tort for injury sustained by the plaintiff, and for damage both to the motor truck which he owned and was operating and to its load, caused by collision with a trolley car of the defendant.

The collision occurred in Waterville, about noontime on October 3, 1925, at the junction of the cul-de-sac called Dennis court and the street known as Water. The excessive and unlawful speed of the trolley car, and the failure to give timely warning that it was approaching, were the acts of negligence counted on.

The car was running southwards on Water street, which Dennis court entered laterally and easterly twenty five feet still south of the nearest regular stopping place ahead.

Coming up Dennis court, which was short, comparatively level, and rather thinly settled, the car track in the street in front was in sight. On the north side of the court, the side of especial concern in this action, there were dwellings and small garages, and at the northeasterly corner of the ways, the Cloverdale store building. From the southwesterly corner of the store, that is, the corner on the court and the street, to the inner rail of the car track, the distance was but ten feet. From that corner, except for the wire-carrying pole, which was near, the field of vision along the car line was unobstructed northward for from thirty five to forty feet.

Plaintiff was familiar with the surroundings. He went into Dennis court that day to sell garden truck and other things, as he had before. His business done, he started back for Water street, sitting in the truck behind the steering wheel, six feet from the end of the front spring. He drove slowly in low gear, apparently no vehicle coming toward him, seemingly none following, the way thirty four feet in width, the position of the truck, when opposite the store, three feet from that side of the road, with the plaintiff aware of the location of the street railway, and of the fact that a car was supposed to be coming.

At the Cloverdale store, but not at the store corner, plaintiff "almost stopped" his car and looked. In front, there was no car, there was none to the southward, and that which later came from the north direction, the building alongside shut from his survey. He continued on, the truck in low gear still, to the edge of the inner rail of the track, where, without having seen or heard anything while traveling the distance, he brought the truck to a full stop to see if a trolley car were near. He looked to the south,

on which the outlook already had been fair from the court, and the track was clear.   He turned his head oppositely and just then the crash was.   The plaintiff was hurt, the motor truck virtually demolished, and the freight of produce and other things destroyed.

So much for the case, on the version of the plaintiff.

The forty-three-foot trolley car was on wet rails, for the day had been rainy.   Touching the rate of speed of the car, there is no precise testimony.   On the one side, the estimate was ten to fifteen miles the hour; on the other, the motorman testified that the car was coasting at from eight to ten miles, and that he made it come to a stop within three-fourths of its length.

Such is fair synopsis of the material record.   From it but one rational inference is permitted, and that adverse to the plaintiff.

If the driver of a motor truck would prevail in an action for damages from a collision between his vehicle and a trolley car at a junction of streets, he must establish by the preponderance of all the evidence, not merely negligence of the defendant in proximate relationship to injury, but the further factual proposition that as driver he himself was in the exercise of that degree of care which an ordinarily prudent man in like circumstances would exercise, and that no want of the like care on his part was contributory to the injury.

Speaking in a broad way, motor trucks and trolley cars have coextensive rights and reciprocal duties at street crossings, but more exactly this is in the qualified sense that the respective rights must be exercised in a reasonable and careful and vigilant manner, with dutiful regard for the right of the other, and so as not unreasonably to interfere with or curtail the right of that other.

"Close watch" is required of the motorman.   *Cobb* v. *Cumberland County Power & Light Company*, 117 Maine, 455.   But watchfulness by him is not all.   It is the law that, if a traveler approach a steam railroad crossing, unmindfiul of the rule requiring him to stop and look and listen, he may not have damages for injury from a collision between his vehicle and the train, because of negligence contributory in character legally and conclusively inferred against him.

Like rule does not obtain at street car crossings.   But thereat it may be imperative that the vehicle traveler stop, and there he must use his senses of sight and hearing when manifestly available. *Warren* v. *Bangor, Orono & Old Town Railway Company*, 95 Maine, 115, 119. Electric railroad crossings are places of danger toward which no one

should come without senses alert, and over which no highway traveler should attempt to pass without reasonable regard for his own safety and for the safety of the employees of the railroad company and that of the passengers in the car. *Philbrick* v. *Atlantic Shore Line Railway,* 107 Maine, 429, 432. Whether failure to look and listen for an on-coming street car before attempting to cross the track is to be deemed negligence must be determined from all the attendant facts and circumstances in evidence. *Denis* v. *Lewiston, Brunswick & Bath Street Railway Company,* 104 Maine, 39, 46.

Of course, what might be great care under one condition of things and under one set of circumstances might be the very essence of negligence under another; in other words, the care which ordinarily careful and prudent persons take should be and is commensurate with the necessity for care and the dangers of the situation. This doctrine, true when defined first, is even truer, in these days of rapid transportation when the motor vehicle, for which all the public way may be usable, vies with the trolley car, running on its fixed track, in the annihilating of distance.

It is not so much that this plaintiff stopped his truck at the store building, nor that he listened in vain for whistle or gong from the car, but of vital significance is it that he did not look, did not look to his right onto the other street, look there from the corner of the Cloverdale store, or look, on that street, as he might have, shortly before he had come to the corner, had his truck been farther toward the south in the court. To look was the essential thing. *Dansky* v. *Kotimaki,* 125 Maine, 72. Had plaintiff looked he ought to have seen the car. Seeing, as he was in duty bound to see, the trolley car obviously to be seen, he, in the exercise of ordinary care and prudence, should have stopped his truck. The truck was moving, he attested, as slowly as was possible. It therefore could have been brought to a standstill instantly, and thereby the truck and car would not have come into collision. Instead, the plaintiff heedlessly kept on to known danger, on to the edge of the car rail and disaster.

However, argues his counsel, though the plaintiff were negligent, that motor man, watching requisitely, ought to have seen the plaintiff on his truck, and, having then the last chance so to do, avoided both injuring him and damaging his property. The answer is that, if the defendant were guilty of negligence, it was not subsequent to and independent of the plaintiff's contributory negligence. *Butler*

v. *Rockland, Thomaston & Camden Street Railway,* 99 Maine, 149; *Welch* v. *Lewiston, Augusta & Waterville Street Railway,* 116 Maine, 191.    The principle of the last clear chance does not apply where, as here, the contributory negligence of the plaintiff was operative to the moment of accident.    *Moran v. Smith,* 114 Maine, 55;    *Bechard* v. *Waterville, Fairfield & Oakland Railway,* 122 Maine, 236.

The jury failed to analyze the evidence on the one side and the other, and therefrom, with reference to the burden of proof, to fashion an authoritative decision illuminated by a sense of justice.    Either what duty on the part of the plaintiff involved was unappreciated, or prejudice or emotion swayed the making of the verdict.    *Harrington* v. *Androscoggin & Kennebec Railway Company,* 124 Maine, 435.

It remains but to record that the verdict is manifestly wrong.

*Motion sustained.*

*New trial granted.*