Dewey Smith, *Adm'r., Etc. v.* P. B. Gould

(No. 6942)

Submitted May 13, 1931.   Decided June 9, 1931.

*Young & McWhorter,* for plaintiff in error.

*A. Jerome Dailey, Lycurgus Hyre* and *H. Roy Waugh,* for defendant in error.

Maxwell, Judge:

This suit is the outcome of an unfortunate automobile accident which occurred on the afternoon of March 18, 1929,

on the main state highway between Buckhannon and Weston. Plaintiff's decedent, Rebecca Smith, traveling toward Buckhannon on a regular passenger bus had alighted from the bus on the right-hand (south) side of the road, and after having walked back along-side of the bus on the edge of the road, she had started across the road in the rear of the bus, when she was struck by defendant's car which he was driving toward Weston, whereby she was injured so severely that she died enroute to the hospital. The trial in the circuit court resulted in a verdict and judgment for plaintiff for $4,000.00. Defendant prosecutes this writ of error.

The highway at the point of the accident was straight for several hundred yards and had a sixteen foot concrete surface with a berm on each side. Houses flanked the road at irregular intervals, making the section a suburban one. Mrs. Smith's evident intention was to cross the road for the purpose of going to her home which was on a side road which intersected the highway at that point. The evidence is conflicting as to whether the bus stopped exactly opposite this intersecting road or had proceeded by it for a few feet in the direction of Buckhannon. There is also a conflict as to whether Mrs. Smith walked across the highway directly behind the bus or whether she walked back some distance from the rear of the bus before crossing. The jury was warranted in believing from the evidence that she pursued the latter course. The evidence preponderates that she had almost reached the other side of the road when she was struck by defendant's car.

Several men, proceeding toward Buckhannon in an automobile following the bus at a short distance, saw the accident and testified at the trial. Their evidence is uncontradicted that Mrs. Smith did not look to her right, the direction from which the defendant was approaching. The bus having immediately resumed its journey toward Buckhannon, there was nothing to have obstructed Mrs. Smith's view of defendant's approaching automobile had she looked in that direction. Two of these witnesses say that the defendant's automobile was from 40 to 50 feet away from Mrs. Smith when she reached a point approximately in the middle of the road. The testi-

mony as to these two matters, first that the defendant's automobile was 40 to 50 feet from Mrs. Smith when she stepped out into the highway, and, second, that defendant's automobile could have been stopped in about its length, is preponderating, therefore, they will be dealt with as proven facts.

Defendant himself testifies that when he reached a point about six hundred feet from the bus, he noticed someone alighting from the bus, and that it was so far away that he thought the person was a school girl. He says that he kept watching to see what she was going to do, but as he drew near the bus his attention was attracted to an oncoming car and then he did not again see her until his wife who was riding with him screamed, and then it was too late to avoid striking the deceased. How defendant could have failed to see Mrs. Smith if, as he says, he was watching an oncoming car, it is difficult to see, for she would be almost directly in his line of vision. He further states that he was driving at the rate of about 20 miles an hour, and in this he is corroborated by a preponderance of the evidence; that he did not slacken the speed of his automobile in the least when he saw the parked bus and the passenger alighting or as he approached the point where the passenger had alighted; and that he sounded no signal until it was too late. A truck driver who was following closely behind defendant's car says that he saw the parked bus and the passenger alight and, after walking back on the berm for 40 or 50 feet, start across the highway, and furthermore, that he stopped his truck before the accident occurred. The testimony of this witness seems to establish the fact that had defendant been looking he could have seen Mrs. Smith in ample time to avoid the accident.

Defendant was inexcusably negligent in the manner in which he approached the point where the accident occurred. He saw the bus; he saw that the bus had stopped and that someone had alighted. He says he knew there was not much likelihood that the passenger who had been discharged from the bus would leave the road from the south side because there was a ditch and an embankment there. He lived in that general community, and knew that people lived along the

intersecting road on the opposite side of the highway. Yet he did not keep a close observation of the road immediately beyond the rear of the bus. The jury was warranted in believing from the evidence (we think a clear preponderance) that the bus started forward after the deceased had alighted therefrom and proceeded on its way as she was walking along the berm in the opposite direction. Defendant further admits that he neither slackened the speed of his car nor sounded an alarm. As a consequence of all of which he was too close upon Mrs. Smith to avoid hitting her when her presence in the traveled portion of the highway became known to him through the information which he received from his wife. He further admits that he probably would not have seen the deceased immediately before striking her had not his wife given alarm.

It may be accepted as settled law that the driver of a motor vehicle is not ordinarily liable for injury to a person who suddenly steps into the path of such moving vehicle from the shelter of a standing vehicle or some other stationary object. *Brien* v. *Gordon,* (Pa.) 34 A. L. R. 1511; *Jean* v. *Nester,* (Mass.) 158 N. E. 893; *Pierce* v. *Horsman,* (Ky.) 256 S. W. 397. Defendant says that such was the manner in which the accident at bar occurred, and he contends that under the principle of law stated there is no liability upon him by reason of the accident. There being ample evidence to support the plaintiff's theory that the deceased did not start across the road immediately in the rear of the bus but that she proceeded along the edge of the road for 25 or 30 feet before starting across, we must, in the light of the verdict for the plaintiff, consider the case in that light. But, even so, in failing to look to her right before she stepped out into the line of traffic she failed to exercise due care for her own safety. Does her negligence preclude her administrator from recovery?

True, as a general rule, contributory negligence on the part of an injured person precludes relief in damages; and concurring negligence on the part of a plaintiff and defendant at the instant of a collision ordinarily bars recovery. The rule as to concurring negligence is particularly applicable in cases where there has been something to put the injured per-

son on guard after he has placed himself in a position of peril, as in the case of *Waller* v. *Ry. Co.*, 108 W. Va. 576, which is illustrative of the legal point though not involving an injury inflicted by an automobile. There the automobile in which the deceased was riding had become stalled on a railroad crossing. He and his companions did not even then look for an approaching train though there was ample time to have seen it and to have gotten out of the way though the automobile could not then be moved. See also *Keller* v. *Railway Co.*, 109 W. Va. 522, 156 S. E. 50. Concurring negligence is of course but a phase of contributory negligence.

It is not to be understood, however, that the salutary, sensible and practical doctrine of contributory negligence, stands as adamant, immovable, unalterable and relentless. It is not a rule of iron. It carries with it an exception or qualification which is as well grounded in American and English jurisprudence as is the rule itself. In fact the qualification not only proves the rule but vitalizes and humanizes it. This is known in the law as the doctrine of last clear chance. It has many variations, and much confusion has been evidenced in the extended and manifold discussions of the same. The base of the rule is this: A plaintiff who has negligently placed himself or his property in a situation of imminent peril and is either unconscious of the situation, or unable to avoid the danger, or both, may nevertheless recover damages of the defendant who negligently inflicts injury, if the defendant could have avoided the injury after discovering the plaintiff's peril. This proposition is generally recognized in American and English cases. It is in the refinements and extensions of the basic principle wherein lie difficulty and confusion.

Should the principle be extended to a case wherein the situation of the plaintiff is as stated in the base rule, *supra*, and the defendant did not actually know of the plaintiff's peril in time to avoid the injury, but, in the exercise of reasonable care under the circumstances, would have known of the plaintiff's perilous situation in time to have avoided the injury? Such is the case at bar, wherein the plaintiff's decedent, negligent in attempting to cross the highway without looking to her right, was evidently unconscious of her im-

minent peril, and the defendant, though not actually seeing her in the act of crossing the street in time to avoid the collision, could and should have seen her in time to have avoided running her down if he had been in the exercise of reasonable care when she first came into the line of his vision as she started across the highway.

The courts of many of our states answer this query in an emphatic negative. It is said that actual knowledge by the defendant of the plaintiff's peril is the *sine qua non* of the doctrine; that the imputed knowledge idea is out of place; that the last clear chance doctrine is founded on the basis of actual knowledge by the defendant of the plaintiff's peril and that a defendant cannot fairly be said to have had a last clear chance to avoid inflicting injury if he did not actually see the peril in time to avoid the injury; that where neither party sees the other there is a situation of concurring negligence; that each owes a duty of lookout; hence no sound basis for recovery by the injured party where the defendant did not actually know the situation. However, the rationale for the extension of the doctrine to a situation wherein the negligent defendant could and should have seen the plaintiff's peril and should have avoided inflicting injury on him is not without its vigorous champions. 45 Corpus Juris, page 990. Such situation is accentuated where there is owing by the defendant to the plaintiff a duty to keep a reasonable lookout commensurate with the instrumentality which he is operating, the locality and attendant circumstances considered. In railroad cases, for example, the duty imposed upon trainmen of maintaining a reasonable lookout for travelers at highway crossings is more exacting than the duty of lookout for trespassers on the railroad right of way. In street railway cases there is a more exacting obligation of lookout at street intersections than between intersections. In the driving of automobiles upon public thoroughfares there is a duty at all times imposed upon their operators to maintain a lookout for persons and property on the highway and to use reasonable care to avoid inflicting injury on such persons or property. Whether, in accordance with such general duty, it should be said that an automobilist should at all times be subject to an

extension of the last clear chance doctrine to such a degree as to make him responsible for injury to a negligent person if the automobilist, though not actually seeing the person or property in time to avoid injury, but in the exercise of reasonable care could and should have seen such person or property, is not necessary for us now to discuss, because that is not the immediate situation under consideration. Here we have superadded circumstances which are of outstanding nature and controlling importance, namely, the admission by the defendant that he saw a girl or woman alight from the standing bus; that he knew that it was unlikely that the passenger would leave the highway to the south; that he knew that a number of persons resided on the opposite side of the highway from where the girl or woman left the bus. These facts and circumstances should have put the defendant on guard; his senses should have been aroused; he should have been on the alert. The reasonable care and precaution, the exercise of which devolved upon him under such circumstances, was quite a different thing from the reasonable care of lookout which devolves upon an automobilist upon open country road where nothing has come to his attention to indicate a situation pregnant with possibilities of disaster.

Apropos of the idea that where a duty rests upon a defendant to keep a lookout for a person in peril, the imputed knowledge theory prevails, we find this succinct statement in the case of *Dent* v. *Bellows Falls Street Ry. Co.*, (Vt.) 116 Atl. 83; ''The extension of the doctrine (last clear chance) to perils not actually discovered is fully justified when the situation is such that the defendant owes the duty of looking out for danger, as in the case of persons crossing a railroad at a highway crossing at grade.'' Among the jurisdictions upholding the imputed knowledge doctrine are: Kentucky: *Ross* v. *Taxicab Co.*, 261 S. W. 590, and *Weidner* v. *Otter*, 188 S. W. 335, in which latter case appears this statement: ''It is, too, a familiar rule in the law of negligence that the care to be exercised must correspond with the capacity to injure and accordingly the automobilist is under a much higher degree of care to look out for the pedestrian than the pedestrian is to look out for the automobilist. The pedestrian can-

not merely by the manner in which he uses the street harm the automobilist, but the automobilist may by his manner of using the street kill the pedestrian; and so, generally speaking, the pedestrian is only required to look after his own safety and not the safety of others, while the automobilist must look out for the safety of the pedestrian rather than his own." See also: *Louisville* v. *Cornett's Admr.*, 35 S. W. (2nd) 10. Maryland: *Consol. R. Co.* v. *Armstrong*, 48 Atl. 1047. Michigan: *Gibbard* v. *Cursan*, 196 N. W. 398. Missouri: *Burke* v. *Papas*, 293 S. W. 142. Connecticut: *Nehring* v. *Conn. Co.*, 84 Atl. 301. Kansas: *Muir* v. *Fleming*, 227 Pac. 536. North Carolina: *West Construction Co.* v. *Atlantic Coast Line Ry. Co.*, 116 S. E. 3. Washington. In *Chase* v. *Taxicab Co.*, 139 Pac. 499, it appears that plaintiff was walking along the street and had observed the defendant in a taxicab some distance away but paid no further attention to the approaching car. The defendant driver had likewise seen plaintiff but because his windshield was wet he did not see him again until almost at the point of the impact. The court in upholding a verdict for the plaintiff, said: "The verdict may be sustained upon another ground. If the respondent (plaintiff) was proceeding in a way that would have indicated to a reasonably prudent man that he was unconscious of the approach of the taxicab and the driver saw him, or in the exercise of reasonable care ought to have seen him, and observed his state of mind and discovered his peril in time to avoid striking him, and failed in this duty, he was guilty of negligence, and his negligence was the proximate cause of the injury; while the negligence of the respondent, if any, was a remote cause." District of Columbia: *Standard Oil Company* v. *McDaniel*, 280 Fed. 993. The Supreme Court of the United States says: "That doctrine, (last clear chance) rightly applied in the *Chunn* case, amounts to no more than this, that a negligent defendant will be held liable to a negligent plaintiff if the defendant, aware of the plaintiff's peril or unaware of it only through carelessness, had in fact a later opportunity than the plaintiff to avert an accident. *Grand Trunk Ry.* v. *Ives*, 144 U. S. 408, 428; *Inland and Seaboard Coasting Co.* v. *Tolson*, 139 U. S. 561, 558." *Kansas City Sou. Ry.* v. *Ellzey*, 275 U.

S. 236. The Virginia reports contain many cases enunciating this doctrine, a few of the more important of which are as follows: *Southern Railroad Co.* v. *Bailey,* 67 S. E. 365; *Roanoke Co.* v. *Carroll,* 72 S. E. 125; *Green* v. *Ruffin,* 125 S. E. 742; *C. & O.* v. *Corbin's Admr.,* 67 S. E. 179; *McGowan* v. *Tayman,* 132 S. E. 316; *Barnes* v. *Ashworth,* 153 S. E. 711. The jurisdiction from which the foregoing cases are taken all recognize imputed knowledge as an element of the last clear chance doctrine and the cases are here cited on that proposition alone.

Reviewing the West Virginia decisions on the doctrine of last clear chance, we find that the imputed knowledge extension is recognized in many of our cases. Among those clearly recognizing this extension are: *Waller* v. *Railway Co.,* 108 W. Va. 577; *Mollohan* v. *Railroad Co.,* 108 W. Va. 490; *Attelli* v. *Laird,* 106 W. Va. 717; *McLeod* v. *Laundry Co.,* 106 W. Va. 361; *Buchannan* v. *Railway Co.,* 102 W. Va. 426; *Freeman* v. *Traction Co.,* 98 W. Va. 311; *Ferguson* v. *Ohio Valley Electric Railway Co.,* 82 W. Va. 323; *Bond* v. *B. & O. Railroad Co.,* 82 W. Va. 557; *Schoonover* v. *Railroad Co.,* 69 W. Va. 560; *Riedel* v. *Traction Co.,* 69 W. Va. 18. A case inferentially announcing the imputed knowledge extension is: *Riggs* v. *Public Service Company,* 105 W. Va. 362. An interesting discussion of the last clear chance doctrine appears in W. Va. Law Quarterly for June, 1931.

In *Attelli* v. *Laird, supra,* the last clear chance doctrine was applied in a situation somewhat similar on its facts to the case at bar. Plaintiff's decedent after alighting from a truck carrying workmen which had parked on a much traveled highway, attempted to cross the road without looking for approaching traffic. Defendant's driver could have seen the parked truck 300 feet away, and, the plaintiff's decedent when he stepped into the highway 175 feet away, but he came on without slackening his speed or sounding a warning although he had passed a similar truck not far down the road with workmen getting aboard it. Twenty-five feet from plaintiff's decedent the driver discovered him and attempted in vain to avoid hitting him. Under this evidence it was held to

be a jury question whether defendant's driver had the last clear chance to avoid the accident.

In *McLeod* v. *Laundry Co.*, *supra*, there was a situation where, by reason of the plaintiff's decedent having started suddenly across the street in front of defendant's delivery truck the driver thereof had no opportunity to avoid striking her. She attempted to run across the street in a driving rainstorm with an umbrella pulled down over her face and right shoulder. Defendant's truck was but ten feet away and to her right when she stepped off the curb; hence all efforts of the driver to stop the vehicle before injuring her were without avail. It was held that the last clear chance doctrine did not apply. The driver not only did not see her in time to avoid the accident but in the exercise of reasonable care he could not have seen her.

The majority of the Court does not share the view expressed by JUDGE HATCHER in the latter part of the opinion in *Keller* v. *Ry. Co.*, 109 W. Va. 522, 156 S. E. 50, that the last clear chance doctrine should not be applied unless the party inflicting injury on another has actual knowledge of such other's peril. We do not think the doctrine should be thus narrowed particularly in cases where the circumstances should have put the defendant on guard, as at bar.

If the defendant had seen the deceased when she started across the highway 40 to 50 feet in front of him (her unconsciousness of her peril being evident from her demeanor), and he had taken no precaution to avoid injuring her (it appearing from the evidence that at the speed at which it was moving his automobile could have been stopped in about its length), clearly he would have been liable in damages under the unquestioned last clear chance doctrine (above referred to as the base rule). If he did not see her at the distance indicated, he was none the less negligent, because, considering the dangerous character of the instrumentality which he was employing, the fact of his having seen the plaintiff alight from the bus, and his knowledge of the locality, it was his reasonable duty to have seen her when she was attempting to cross within the direct line of his vision. One may not negligently and carelessly use on a public road a vehicle

which, because of its weight, power and speed, is capable of inflicting grievous injury on other persons, and then, when an accident has happened, invariably escape responsibility because, forsooth, the victim of the accident was also negligent, and defendant did not actually see plaintiff's peril in time to avoid inflicting the injury. The defendant in such case may escape liability or he may not, depending on the particular circumstances of the case. If, as in the case at bar, the circumstances are such as should have put the defendant on guard, we perceive no basis in sound reason why he should not be held liable.

It is stated in effect in many cases that although knowledge of the plaintiff's peril may be imputed to the defendant where the latter owed a duty of reasonable lookout, such principle cannot be applied where the negligence of the plaintiff concurs with that of the defendant at the instant of the injury. Typical of these cases is *Dyer* v. *Power & Light Co.,* (Me.) 115 Atl. 194. On principle why should this be so in all cases? Conceding that in reason it is applicable to many cases, must it be applied in all? If a pedestrian negligently continues in a position of peril, under circumstances which clearly indicate his unconsciousness of his peril and that he is not likely to extricate himself therefrom, and a motorist, in the exercise of reasonable care, has full opportunity to see the plaintiff and comprehend his peril, and has time to avoid injuring him in the exercise of further reasonable care, why should such defendant not be held responsible for the results of his palpable failure to discharge his reasonable duty to a fellow being? If, in such cases, where the plaintiff's negligence continues to the instant of the accident, the defendant is liable if he actually saw the plaintiff's peril in time to avoid the accident (such seems to be the trend of the decisions, 45 L. R. A. (N. S.) 896, note; *Mosso* v. *Stanton Co.* (Wash.) 134 ·Pac. 941, why should such defendant be any the less liable because he "closed his eyes" to the situation—failed to see that which he easily could have seen and ought to have seen? But, however this may be, there seems to be but one rational answer where the circumstances are such as to have put the defendant specially on guard, as in this case. The Virginia

court has expressed itself unequivocally on this subject. In *Barnes* v. *Ashworth,* (Va.) 153 S. E. 711, decided in 1930, in an exhaustive discussion, it is said, in effect, that the doctrine of last clear chance is applicable if it is established that, ''had the defendant kept such a lookout, as he was required by law to keep, he would or ought to have been aware from facts and circumstances which would have been brought home to his knowledge that the plaintiff was unconscious of his peril, and would take no steps to secure his own safety, or was in a situation from which the exercise of ordinary care on his part would not thereafter extricate him.'' In the prior case of *McGowan* v. *Tayman,* 132 S. E. 316, the Virginia Court declared: ''The doctrine of last clear chance has no application to the defendant except where the plaintiff is guilty of negligence; but such negligence, even though it continued up to the moment of the injury, does not relieve the defendant of liability if he knew, or ought to have known, the peril in which the plaintiff had negligently placed himself, and had a clear chance, notwithstanding such negligence, to save him from injury. His failure to avail himself of such last clear chance is negligence, which becomes the proximate cause of the plaintiff's injury. Shearman & Red. On Neg. (5th Ed.) sec 99; *Wilson's Admr.* v. *Portland Ry.,* 94 S. E. 347, 122 Va. 262; *Va. Ry. & Power Co.* v. *Smith,* 105 S. E. 532, 129 Va. 269.''

In 2 Thompson on Negligence (2d Ed.) sec. 1476, the learned author in expressing his condemnation of the doctrine that a street railway company will not be liable in damages for injuring a person who was guilty of negligence in exposing himself to danger, unless the operatives of the street car actually discovered the peril in time, by the exercise of ordinary care, to avert injury, uses this language: ''It ignores the obvious conclusion of sense and justice, that the fact that they, and not the driver or the foot passenger, are propelling the instrument of danger, puts upon them the duty of exercising constant care and watchfulness to avert death or injury to the other members of the public who use the highway.'' One is impressed that the learned author's criticism of the doctrine he is discussing with reference to street railways applies with great force to automobilists.

We think it is a sound principle that the last clear chance doctrine is properly extended to a case where an automobilist, by reason of failure by him in his plain duty to maintain a lookout for the persons and property of others on the highway, commensurate with the danger indicated by attendant facts and surrounding circumstances known to him, and which are such as to have put him on the alert, causes injury to a pedestrian (though such pedestrian was himself concurrently negligent), where the peril should have been seen and comprehended by the automobilist and the injury avoided in the exercise of reasonable care commensurate, with the situation. Such case constitutes an exception to the general rule which precludes recovery by a plaintiff whose negligence has concurred with the defendant's.

The principal objection to plaintiff's instructions is that certain of them, though binding in nature, ignored the defense of contributory negligence. In the light of the fact that under the rules of law, above set forth, properly applicable to the facts of this case, the contributory negligence of the deceased does not preclude recovery in this action, the omission of reference to that defense in plaintiff's instruction does not constitute prejudical error.

As to instructions tendered by the defendant and refused by the court, we find that they were either covered in substance by instructions which were given on behalf of the defendant or else they embodied propositions which were inconsistent with the doctrine of last clear chance.

The remaining point of error goes to the action of the trial court in overruling a motion of the defendant to declare a mistrial on account of the fact that on cross-examination of J. L. Jennings, a justice of the peace of Upshur County, who was one of defendant's witnesses, there was at least inferentially disclosed to the jury the fact that the defendant was insured against loss on account of the accident upon which the suit is predicated. The situation arose in this manner: On either the evening of the day of the accident, and within a very few hours thereafter, or on the evening of the succeeding day (there is confusion in the record as to the exact time) an anomalous sort of hearing was held before the said magis-

592

trate. The record does not disclose at whose instance the hearing was held. Witnesses to the accident were in attendance at the migistrate's office and were examined under oath by both the magistrate and counsel representing the insurance company. No one representing the husband or the deceased woman was present at the magistrate's hearing. At the trial the magistrate was put on the witness stand by the defendant to explain this most unusual procedure. On direct examination the magistrate testified: "Well, there were parties * * * and I am not sure about who those parties were * * * that thought there should be an inquest held, and I didn't see the necessity of it myself * * * but, finally decided that I would hold a preliminary examination and ascertain whether or not it would be necessary * * * that is, to hold an inquest. I got the names of the parties who were supposed to have been nearest this accident at the time * * * and they were examined." He further testified that the evidence was taken down in shorthand. On cross-examination he was asked this question: "In other words, the testimony wasn't taken down for the purpose of this preliminary hearing at all?" To which inquiry he answered: "No, my understanding was that the insurance company wanted it taken down." Objection was immediately interposed by the defendant, whereupon the court said to the jury: "Yes, gentlemen, that will have to be stricken out, and the jury is instructed to pay no attention whatever to this statement of the witness, and we will not discuss it further at this time, gentlemen." The information which the magistrate thus injected into the record with reference to the insurance company was clearly voluntary on his part. The question was not so framed as to elicit that sort of a reply, nor could counsel who was cross-examining the magistrate have anticipated that any such reply would be made.

In the trial of personal liability actions the fact that the defendant is protected by insurance should not be injected into the evidence. *Christie* v. *Mitchell*, 93 W. Va. 200; *Moorefield* v. *Lewis*, 96 W. Va. 112. But the fact of the injection of such improper testimony is not invariably a cause for reversal. In *Ambrose* v. *Young*, 100 W. Va. 452, we held that

a case should not be reversed on that ground "where it clearly appears that counsel for the plaintiff did not solicit such testimony and could not have anticipated the objectionable answer of the witness, and where the court instructed the jury to disregard it." That is the exact situation at bar. And again, a case will not be reversed on that ground, "if the verdict for the plaintiff is supported by a plain preponderance of the evidence." *Jefferies* v. *Ashcraft*, 104 W. Va. 636. That, too, is the situation at bar.

We affirm the judgment of the trial court.

*Affirmed.*

HATCHER, JUDGE, (dissenting):

I have no quarrel with the majority of the Court merely for disagreeing with my personal expression in the last paragraph of the opinion in *Keller* v. *Ry. Co.*, 109 W. Va. 522, 528, 156 S. E. 50, 52-3. I regret the disagreement, of course, but I find companionship with other jurists, such as Cardozo, who said in 1930: "The doctrine of the last clear chance, however, is never wakened into action unless and until there is brought home to the defendant to be charged with liability, a knowledge that another is in a state of present peril." *Woloszynowski* v. *Ry. Co.*, (N. Y.) 172 N. E. 471-2. See also the strong opinions of Judge Williams in *Todd* v. *Ry. Co.*, (Tenn.) 185 S. W. 62, and Judge (now Justice) Van Devanter in *Denver Co.* v. *Cobb.* 164 Fed. 41.

I cannot agree with the majority opinion, because (with all deference) it seems to me to be illogical, to be inconsistent with the common law doctrine of contributory negligence to which we are pledged by our constitution, to be inconsistent with our own decisions and to be inconsistent with most of the very cases cited in the opinion. It seems illogical to impute knowledge of the situation to the motorist, and not impute like knowledge to the pedestrian, when she had equal opportunity with the motorist of acquiring the knowledge. It seems illogical to hold that due care by the defendant would have prevented the accident and yet ignore the correlative fact that due care by Mrs. Smith would also have prevented it. *Nashua Co.* v. *Rr. Co.*, 62 N. H. 159, 165. It

seems illogical (except under the doctrine of comparative negligence) to condone the absent-mindedness of Mrs. Smith at a certain point, but not excuse the inattention of the defendant *at the same point*. ("It does not deal between the parties with equality." *Emmons* v. *Southern Pac. Co.*, 97 Ore. 263, 285.) It also seems illogical to bring the instant case under the doctrine of the last clear chance at all, because "the whole theory of the doctrine is based upon and confined to conduct subsequent to the discovery of the danger." *Penn. R. Co.* v. *Swartzel*, 17 F. (2d) 869, 870. "It would seem that the true test is the existence of the *last* opportunity of avoiding the accident." Salmond, Law of Torts (4th Ed.), 43; Pollock, the Law of Torts, (13th Ed.), 474-5, 484; 1 Street, Foundations of Legal Liability 126, 136. The majority opinion is inconsistent with *Carrico* v. *Ry. Co.*, 35 W. Va. 389, 398, which holds: "In regard to contributory negligence the law is well settled in this state. The general rule is that if the negligence is mutual there can be no recovery." (Two exceptions to the general rule are then stated but the instant case does not come within either.) The opinion is inconsistent with *Riedel* v. *Traction Co.*, 63 W. Va. 522, which holds: "It is incumbent upon both parties to exercise care and when it is apparent that both have been negligent and their negligence is concurrent or co-incidental so that the negligence of neither can be regarded as having been the proximate cause of the injury, no damages can be recovered." (In relation to proximate cause it should be noted: "The doctrine of last clear chance does not abrogate any of the rules of proximate cause." *Locke* v. *R. & P. Co.*, 100 Wash. 432, 437. "In determining whether the cause of an accident is proximate or remote, the same test must be applied to the conduct of both parties." *Rider* v. *Ry. Co.*, 171 N. Y. 139; 45 C. J. 972.) The opinion is inconsistent with *Waller* v. *Ry. Co.*, 108 W. Va. 576, 585, in which, after demonstrating that the injured parties had an equal or better possibility of seeing the train than the enginemen had of seeing the automobile, the court said: "On that basis their continuing contributory negligence would eliminate application of the doctrine of last chance." The opinion is inconsistent with *Keller* v. *Ry. Co.*,

*supra,* which holds: "Where a plaintiff is negligent and his negligence concurs and cooperates with that of the defendant as a proximate cause of the injury complained of, he cannot recover." The opinion is inconsistent in relying on such cases as *Riedel* v. *Traction Co.,* 69 W. Va. 18; *Schoonover* v. *R. R. Co.,* 69 W. Va. 560, and kindred cases, since these cases have been deliberately classified as "speculative" and founded on "casuistry" by this Court in its opinion in the *Keller* case, decided just six months ago. It would seem that the versatility of our decisions on this subject is even now somewhat disconcerting to the bar, and that further involvement should be avoided. See the well considered articles by Harriet French of the Bluefield Bar in the February, 1930, issue of the West Virginia Law Quarterly, and by Robert Donley of the Morgantown Bar in the June, 1931, issue of same publication.

The case of *Dent* v. *Bellows Falls St. Ry. Co.,* (Vt.) 116 Atl. 83, quoted in the majority opinion, does recognize the doctrine of imputed knowledge, but the conclusion of the majority (in the instant case) is not in harmony with the definition given in the syllabus (point 4) of the Vermont case which is: "The last clear chance doctrine presupposes a perilous situation, created or existing through the negligence of both plaintiff and defendant, but assumes that there was a time after such negligence had taken place when the defendant could, and the plaintiff could not by use of means available avert the accident." (In the instant case, there was no time when Mrs. Smith could not—by looking—have averted the accident as well as the defendant.) The Vermont court has expressly refused to extend this doctrine to cases of actively concurring negligence. "The last clear chance rule does not apply where the plaintiff's negligence is concurrent and of the same degree as that of the defendant." *Aiken* v. *Metcalf,* 92 Vt. 57.

The Kentucky cases cited in support of the doctrine of constructive knowledge, do support the conclusion of the majority; but the quotation from *Weidner* v. *Otter,* shows beyond peradventure that the Kentucky rule is based squarely on the

doctrine of comparative negligence—a doctrine which the majority refuses to recognize openly.

*Consol. R. Co.* v. *Armstrong,* (Md.) 48 Atl. 1047, cited in the majority opinion, affords it no support whatever, because in that case the court found in favor of the defendant railroad company in view "of the undoubted contributory negligence of the plaintiff without which the accident would not have occurred and the practical absence of evidence tracing the cause of the injury to the negligence of the defendant's agents." Maryland may favor the doctrine of imputed knowledge, but the holding of that court does not favor the extension made by the majority in the instant case. "Contributory negligence bars recovery, when proximate cause of injury * * * negligence is proximate cause of injury when party injured, by the exercise of ordinary care, might have avoided the consequences of the negligence of the other party." *Ry. Co.* v. *Price,* 29 Md. 420, 96 Am. Dec. 545.

The majority conclusion is opposed by *Gibbard* v. *Cursan,* (Mich.) 196 N. W. 398, (another case cited in the opinion in support of the doctrine of imputed knowledge) which holds: "The doctrine of gross, subsequent or discovered negligence may not be invoked to excuse concurrent negligence of the plaintiff." *Burke* v. *Pappas,* (Mo.) 293 S. W. 142, supports the majority opinion in all respects. Prior to 1907, the Missouri court seems to have upheld fully the common law conception of the bar of contributory negligence. See the case of *Hornstein* v. *Rys. Co.,* (Mo.) 4 L. R. A. (N. S.) 729, decided in 1906. But in 1907, a statute was enacted by the legislature of Missouri, which, in effect, repealed the common law rule of contributory negligence by imposing upon the operator of an automobile on a public road or street "the highest degree of care that a very careful person would use under like or similar circumstances to prevent injury," and by making such operator liable in damages for failure to use such degree of care, unless the injury was caused "by the direct negligence of the injured or deceased person contributing directly thereto." Revised Statutes, Missouri 1909, sec. 8523. This statute has been modified from time to time but it still exacts of the operator of an automobile "the highest degree of care".

Revised Statutes, Missouri 1930, sec. 7775. So, it appears that the present position of the Missouri court must be attributed largely, if not entirely, to a statute which we do not have in West Virginia.

The majority conclusion is opposed by *Nehring* v. *Conn. Co.*, 84 Atl. 301, 86 Conn. 109, (also cited in support of the doctrine of imputed knowledge) which holds: ''Where the plaintiff's negligence continues as an active agency in producing the resulting injury down to the time of its occurrence, or until it is too late for the defendant in the exercise of reasonable care to save him, his conduct must be regarded as a concurring efficient cause, proximate and not remote, of the injury. To hold that in such a case the plaintiff could recover for the injury would be to ignore the fundamental principle of the law of contributory negligence.''

The supreme court of Kansas supports the majority opinion on the doctrine of imputed knowledge, as shown by the cited case of *Muir* v. *Fleming*, 227 Pac. 536; but the Kansas court (like the courts of Vermont, Connecticut and Michigan) opposes the conclusion of the majority, because of actively concurring negligence of the injured party. ''A plaintiff who has received an injury occasioned by the negligence of the defendant, but who could have avoided it by the exercise of ordinary care on his own part, cannot recover damages therefor, although the defendant ought to have discovered (but did not in fact discover) his peril in time to have prevented the accident, where the plaintiff's negligence continued up to the very moment he was hurt, and where the exercise of reasonable diligence before that time would have warned him of his danger and enabled him to escape by his own effort.'' *Dyerson* v. *Railroad Co.*, 74 Kansas 528, 529.

*West Const. Co.* v. *Ry. Co.*, (N. C.) 116 S. E. 3, (cited by the majority) was an action for trespass to personal property—a case not aptly chosen to support an innovation on the humanitarian doctrine of the last clear chance. I will admit, however, that North Carolina does subscribe to the doctrine of imputed knowledge. *Gunter* v. *Wicker*, 85 N. C. 310; *McLamb* v. *Rr.*, 122 N. C. 862, 873. (But see page 874 where it is held that the *same degree* of care is required of one

party as of the other.) The quotation from *Chase* v. *Taxicab Co.*, (Wash.) 139 Pac. 499, also supports the majority on the doctrine of imputed knowledge. But the Washington court (like the courts of Vermont, Michigan, Connecticut and Kansas) opposes the majority conclusion in cases of actively concurring negligence. "Thus we have two different situations to which the last clear chance rule applies. In the one, the plaintiff's negligence may continue up to the time of the injury if the defendant actually sees the peril; in the second, the plaintiff's negligence must have terminated if the defendant did not actually see the peril, but by the exercise of reasonable care should have seen it." *Leftridge* v. *Seattle*, 130 Wash. 541, 545.

The case of *Standard Oil Co.* v. *McDaniel*, (D. of C.) 280 Fed. 993, supports the majority on the doctrine of imputed knowledge. But this case loses in persuasive authority, because the District of Columbia is under federal control and the federal statute has abolished in part the common law rule of contributory negligence. The quotation from *Kansas City Southern Ry.* v. *Ellzey*, 275 U. S. 236, seems to require a negligent defendant to have *"in fact* a later opportunity than the plaintiff to avert an accident" before applying the doctrine of last clear chance. If so, that case has no application to the instant case.

The majority conclusion is opposed by *Southern Ry. Co.* v. *Bailey*, 67 S. E. 365, 110 Va. 833 (also cited in support of the doctrine of imputed knowledge) which holds: "But this doctrine has no application to a case where both parties are equally guilty of an identical duty, the consequences of which continue on the part of both to the moment of the injury and proximately contribute thereto."

The majority conclusion is opposed by *Roanoke Co.* v. *Carrol*, (Va.) 72 S. E. 125, 128, (also cited in support of the doctrine of imputed knowledge) which holds: "The doctrine is one of prior and subsequent negligence, or remote and proximate cause, and presupposes the intervention of an appreciable interval of time between the prior negligence of the plaintiff and the subsequent negligence of the defendant. Where the negligence of both continues down to the moment of

the accident and contributes to the injury, the case is one of concurring negligence and there can be no recovery.''

The majority conclusion is opposed by *Green* v. *Ruffin,* 125 S. E. 742, 141 Va. 628, (cited in support of the doctrine of imputed knowledge) which holds: ''The doctrine of last clear chance is a duty imposed by law on both the plaintiff and defendant. If being in plain view of each other and with equal opportunity to prevent the accident, they are guilty of concurring negligence, there can be no recovery.''

*C. & O. Ry. Co.* v. *Corbin's Admr.,* (Va.) 67 S. E. 179, (181), supports the majority opinion as to imputed knowledge ("discovered peril") merely through dicta, as the court said that ''the jury would have been warranted in drawing the inference from the evidence that the engineer had actual knowledge of Corbin's peril.'' *McGowan* v. *Tayman,* (Va.) 132 S. E. 316, and *Barnes* v. *Ashworth,* (Va.) 153 S. E. 711, are the main cases relied upon by the majority. The *Mc-Gowan* case cites Shearman & Redfield on Negligence, (5th Ed.), sec. 99. This section does not support either the *Mc-Gowan* or the instant decision, and section 101 distinctly repudiates them, saying: ''The foregoing rule (last clear chance) obviously does not apply where the plaintiff's contributory negligence is in order of causation either subsequent to or concurrent with that of defendant.'' The *McGowan* case also cites *Wilson's Admr.* v. *Ry.* 122 Va. 262, and *Va. R. & P. Co.* v. *Smith,* 129 Va. 269. Insofar as the *Wilson* case supports the *McGowan* case it is by dicta as point 4 of the syllabus in the *Wilson* case shows that the brakeman (on a moving car) had *actual knowledge* of the danger of the injured person and that he was heedless of his danger. The holding in the *Va. R. & P. Co.* case is inconsistent with its own declaration of the law as made in point 5 of the syllabus, which is as follows: ''Upon the principle that one will be charged with notice of that which by ordinary care he might have known, it is held that if either party to an action involving the questions of negligence and contributory negligence should, by the exercise of ordinary care, have discovered the negligence of the other after its occurrence in time to forsee and avoid its consequences, then such party is held to have

notice." If both parties are negligent and each should have discovered the negligence of the other, as in the instant case, then both must be held to have had notice, if the law is to be applied without discrimination. The *McGowan* case was decided in March, 1926, and just one month later, in April, 1926, the Virginia court decided the case of *Bassett & Co.* v. *Wood*, 132 S. E. 700, which makes assertions utterly at variance with the *McGowan* and the instant decision, viz: "There is really no distinction between negligence in the plaintiff and negligence in the defendant, and where their negligence concurs to produce the injury there can be no recovery. * * * The doctrine of last clear chance, strictly speaking, applies only to those cases where the negligence of the parties contribute or concur to cause injury, but before damage is inflicted, one or other of the parties has time and opportunity to avoid the injury and fails to do so." (pp. 703 and 705'). The *McGowan* case does not explain the defection of the Virginia court from such of its decisions as *Traction Co.* v. *Martin's Admr.*, 102 Va. 209; *Brewing Co.* v. *Doyle*, 102 Va. 399; *Lime Co.* v. *Affleck's Admr.*, 115 Va. 643; *McMamara* v. *Rainey Corp.*, 139 Va. 199, decided in 1924, which held: "There is no reason why the defendant should not have the benefit of the last clear chance doctrine as well as the plaintiff. * * * even though the driver of defendant's car was running at an excessive rate of speed and was negligent in not keeping a proper outlook, this did not excuse the plaintiff for putting himself in the way of an oncoming dangerous instrumentality, which by the exercise of ordinary care he should have discovered in time to have avoided the collision." The effect of the *McGowan* decision, however, is modified if not discredited by the later case of *Meade* v. *Saunders*, 151 Va. 636, decided in September, 1928, which holds: "Where a car and a pedestrian are traveling at right angles, and their paths must cross only a few feet ahead, and there is a clear view and the pedestrian has seen the approaching car, a collision under such circumstances can only arise as the result of the concurring or independent negligence of the plaintiff. If the continuing negligence of a plaintiff, up to the time of the injury, concurs with the

negligence of the defendant in causing the injury, the plaintiff cannot recover." The facts in that case differ from the facts in the instant case merely in that Mrs. Smith did not see the defendant's car approaching. That difference *in fact* makes no difference *in law*, as is shown on page 642 of *Meade* v. *Saunders*: "In other words, if he did look he was bound to see the truck and was negligent as a matter of law in stepping in front of it; and if he did not look, his negligence as a matter of law is none the less apparent."

*Barnes* v. *Ashworth*, (Va.) 153 S. E. 711, comforts the majority opinion by dicta only, as (a) point 17 of its syllabus is: "Person cannot shut his eyes to danger in blind reliance on another without assuming consequences", and (b) judgment was entered in the supreme court for defendants because of the contributory negligence of Barnes' decedent. The majority praises the dicta in that case as "an exhaustive discussion". I find no special mark of lucubration in the opinion. The "discussion" refers to *Mosso* v. *Stanton Co.*, 75 Wash. 220, L. R. A. 1916A 943, (a leading case) as holding that "the doctrine of the last clear chance has no application, unless the negligence of the plaintiff has either terminated or culminated in a situation of peril from which the exercise of ordinary care on his part would not thereafter extricate him." The "discussion" then cites in all some ten Virginia decisions (without mentioning the *McGowan* case) from which it apprehends that the application of the doctrine has been extended much farther in Virginia than in some of the other states. The "discussion" *gives no reason* for the Virginia extension, but in fact says that some of the Virginia decisions are "too broad and misleading" and winds up by adopting certain requirements enumerated in the opinion of *Rooney* v. *Levinson*, 95 Conn. 466, 469, 111 Atl. 794, 795. I have already demonstrated that the Connecticut court does not countenance the majority conclusion and the *Rooney* case is no exception, holding: "In the present case the evidence showed an automobile going west, colliding at a street intersection with a motorcycle going south, the owner of each claiming that the other vehicle was being driven at an excessive rate of speed; *held*, that the situation thus disclosed

furnished no basis for the application of the last-clear-chance doctrine.'' It is hard to conceive why the majority should rely on dicta in ''the exhaustive discussion'' of the Virginia case, rather than on the ruling in the Connecticut case to which the Virginia decision finally turns. Why drink far down the stream, when the source is available?

In passing I will add that in recent years a statute has been enacted by the legislature of Virginia which prevents the contributory negligence of an employee of a common carrier from barring a recovery for personal injuries. 1930 Va. Code, sec. 5792. I am apprehensive that this statute has colored the view of the Virginia courts in other cases involving personal injuries, and I do not consider the more recent Virginia decisions on the doctrine of contributory negligence as Simon-pure as of yore.

It is true that Judge Thompson warms up to the doctrine of comparative negligence in sec. 1467 of his Commentaries on Negligence, quoted in the majority opinion. But the majority overlooks that this learned author approves and illustrates the rule that the plaintiff cannot recover when both parties are contemporaneously and actively at fault, as follows: ''The traveller fails to exercise his faculties to discover the approach of a train, and those in charge of the train fail to give the proper signal on approaching the crossing. When he discovers the train on the one hand, and when the trainmen discover him on the other, it is too late to avoid the collision. In such a case, unless the doctrine of contributory negligence is abolished, there can be no recovery. The negligence of each is a proximate cause of the catastrophe; the negligence of one is just as near the catastrophe as that of the other.'' Sec. 237. See also sec. 1471.

It therefore appears that the majority opinion is supported fully by only the decisions of Kentucky, Missouri and by one decision in Virginia *(McGowan* v. *Tayman)*; that the Kentucky decisions are based on ''the exploded heresy of comparative negligence'' *(Johnson* v. *Stewart,* 62 Ark. 164, 169); that the Missouri decisions are influenced by legislative enactment; and that the Virginia decision is isolated by the later case of *Meade* v. *Saunders.* It seems to me that the Ken--

tucky decisions, the Missouri statute and the lone Virginia case (and a few other irregular decisions here and there) afford the majority no justification for nullifying the common law doctrine of contributory negligence (*Graybill* v. *Clancy*, (Okla.) 291 Pac. 87, 88), and for opposing the otherwise settled view that the doctrine of constructive knowledge does not apply in cases of actively concurring negligence. "Now it must be apparent upon even a slight analysis of the rule (last clear chance) that it can be applied only in cases where the negligence of the defendant is proximate and that of the plaintiff remote; for if the plaintiff and the defendant both be negligent and the negligence of both be concurrent and directly contributory to produce the accident, then the case is one of contributory negligence pure and simple." *Drown* v. *Tr. Co.*, (Ohio) 118 Am. St. Rep. 844, 849; *Aiken* v. *Metcalf*, *supra; Blanchette* v. *Ry. Co.*, (Me.) 136 Atl. 116, 118; *Dyerson* v. *R. R. Co.*, *supra; Leftridge* v. *Seattle, supra; Bourett* v. *Ry. Co.*, (Ill.) 121 N. W. 380; *Evans* v. *Express Co.*, 122 Ind. 362; anno. 55 L. R. A. 465; note 36 L. R. A. (N. S.) 958-9; note 45 L. R. A. (N. S.) 896; note L. R. A. 1916A 944-5; 3 Harvard Law Rev. 263, 276; 24 Yale Law Journal 331-2; 45 C. J., subject, Negligence, sec. 542; 20 R. C. L., subject, Negligence, sec. 116; Beach on Contributory Negligence, sec. 56; Shearman & Redfield, The Law of Negligence, (6th Ed.), sec. 101.

The majority opinion would avoid this crushing weight of authority on the theory (according to the opinion) of "superadded circumstances which are of outstanding nature and controlling importance," which "should have put the defendant on guard; his senses should have been aroused; he should have been on the alert." Such strong words as "outstanding" and "controlling" are not aptly used unless the majority is of opinion that the "superadded circumstances" were equivalent to actual notice to defendant of what followed. If of such opinion what occasion is there for the majority to resort to an extension of the doctrine of imputed knowledge? Why turn to a strange minority faith when it is settled law that if there is time to prevent an accident concurring negligence is not a bar in case of actual knowledge? The circumstances men-

tioned follow (enumeration mine): "The admission by the defendant (1) that he saw a girl or women alight from the standing bus; (2) that he knew that it was unlikely that the passenger would leave the highway to the south; that (3) he knew that a number of persons resided on the opposite side of the highway from where the girl or woman left the bus." I cannot see that the fact (1) of Mrs. Smith alighting from the bus to the berm of the highway has any more significance than if she had come out of a house or other building to the berm, or if she had been walking on the berm without defendant's seeing where she came from. The fact that she started walking along the berm simply imported that she was going somewhere, and of itself can be no more singular than the conduct of any other person walking on the sidewalk or the highway. The majority opinion would amplify that circumstance by the alleged admission of defendant (2) "that he knew that it was unlikely that the passenger would leave the highway to the south." This charge against the defendant is based solely upon his testimony as follows: "Q. You knew from the location of the land there, and the ditch between the road and the railroad, that she (Mrs. Smith) could not cross directly from that point to any of the houses on your left, could she? A. No. She would not be apt to cross that ditch and climb the bank." It will be noted that this question and answer apply to crossing the ditch *directly* at the place the bus stopped. Elam McVaney, one of plaintiff's own witnesses, testified (without contradiction or explanation) that people did cross the railroad track from the highway "on up above" where the bus stopped. The opinion of the defendant that Mrs. Smith would not "cross that ditch and climb the bank" or cross the railroad *directly* from the *point* where the bus stopped, did not exclude the idea that she might cross "on up above." It is true (3) defendant knew that a number of persons resided north of the highway, yet (a) it appears from the testimony of McVaney that about the same number resided south of the highway and (b) it does not appear that defendant knew Mrs. Smith or where she resided. Consequently, I contend that the answer of defendant above, does not warrant the broad construction given it by the

majority,. and that the so-called ."outstanding" facts could not have impressed the defendant with any definite idea of the direction Mrs. Smith would take.

While the majority opinion, in more than one place, says that the circumstances "should have put the defendant on guard," yet the opinion no where specifies *against what* he should have been on guard. Had this unfortunate lady been feeble-minded or deaf, and had given indication to the defendant of these afflictions or that she was absent-minded, then it might be justly said that the defendant should have been on guard against her lack of care in crossing the road. But there was nothing in her bearing or conduct when he observed her at the side of the bus to warn him that she would not proceed as a normal person should. Assuming that the circumstances should have impressed him with the idea that Mrs. Smith would cross the road, yet if there was no indication that she might cross in a negligent manner, there was nothing to make him particularly "alert" or "arouse his senses beyond the ordinary" as the opinion charges. Without special warning that Mrs. Smith was about to expose herself to danger from his car he could owe her no more than the general care he owed all pedestrians. *Ind. Tr. Co.* v. *Croly,* 54 Ind. App. 566, 579, 580.

If the circumstances preceding Mrs. Smith's attempt to cross the road were not sufficient to warn the defendant that she might proceed in a negligent manner, then the circumstances have no proper part logically in applying the doctrine of the last clear chance. "The inquiry involved in the application of this doctrine of the last clear chance begins only when the injured person has to come into a position of actual present peril; it is not concerned with earlier situations or happenings. This distinction is an important one and should be constantly borne in mind, for otherwise the place occupied by contributory negligence in our law is lost sight of." *Bujnak* v. *Connecticut Co.,* 94 Conn. 468. "The doctrine of the last clear chance rests upon the principle that there is something in the plaintiff's condition or situation to admonish the defendant that he is not able to protect himself." *Roanoke Co.* v. *Carroll, supra,* cited in support of the majority

opinion. Under other authority there cited, a motorist has the right to assume that a pedestrian preparing to cross the highway will do so in the exercise of due care. ''The operator of the train (or the automobile) has the right to presume that the person will protect himself and until it appears that he cannot or will not exercise his powers to protect himself, the operator is free from negligence.'' *Green* v. *Ruffin, supra.* Even the Missouri court holds that the doctrine of the last clear chance does not apply to a collision between a vehicle and a pedestrian ''if the motorman was not warned by the pedestrian's demeanor that he was about to endanger himself.'' *Haffey* v. *Ry. Co.,* (Mo.) 135 S. W. 987. This is the law generally. ''In the absence of knowledge to the contrary or some fact which ought to arouse his suspicion, motorman of electric train has a right to presume that one seen at a public crossing is in possession of all of his senses, and that care for his own safety will induce him to use them and to act on the warnings conveyed through them.'' *Emmons* v. *S. P. Co.,* 97 Ore. 263; 2 R. C. L., subject, Automobiles, sec. 20; annotation 69 L. R. A. 550; Thompson, Comm. on Negligence, White's Supplement, sec. 1476.

The majority opinion does not mention this presumption which is ordinarily the lawful right of a motorist. Failure to accord this right to defendant may be due to the conception of his conduct by the majority as ''inexcusably negligent.'' I do not get that conception from the evidence. The opinion states that the speed of defendant's car at the time of the accident was 20 miles an hour and that the car could have been stopped in its own length. If so, the speed was lawful and the car was under control. Unless motorists be required to have the gift of divination, the defendant was not negligent in failing to anticipate that Mrs. Smith would be oblivious to danger. The majority opinion takes it as established ''that had defendant been looking he could have seen Mrs. Smith in time to avoid the accident.'' I presume what the majority means is that if the defendant had been looking out specially for Mrs. Smith he could have seen her in time. But it appears from the evidence that after defendant lost sight of Mrs. Smith (at the side of the bus) his attention became fixed on passing

an approaching car, which was within 100 to 150 feet at the time of the accident. Unless the majority can say that defendant was in no danger from and owed no care to the oncoming car, then it cannot claim that his observation of the car was culpable; and unless the majority can say that defendant was forewarned of Mrs. Smith's negligent deportment, then it should not censure him for watching that car and thus failing to note her lateral approach. The vision of Argus exists only in mythology.

When Mrs. Smith reached a point of danger, the center of the road, she was then some 40 or 50 feet in advance of defendant's car, according to the majority opinion. At 20 miles an hour, the car was traveling at the rate of 29 1/3 feet a second. At that speed, less than two seconds passed from the time Mrs. Smith was at the center of the road and the moment of impact. The main witness for plaintiff says that Mrs. Smith was about 15 feet from the car when she arrived directly in front of it. If so, less than one second elapsed after the decedent stepped into the pathway of the automobile until she was struck. Even under the doctrine of imputed knowledge, where was the *appreciable interval* giving defendant time to have acted effectively? *Barnes* v. *Ashworth, supra,* gives the following statement of the factors necessary to make such an opportunity: "The last clear chance implies thought, appreciation, mental direction and the lapse of sufficient time to effectively act upon the impulse to save another from injury." There must have been an appreciable interval of time between their actual or imputed knowledge of the situation and the collision." *Waller* v. *Ry. Co.,* 108 W. Va. 576, 583. This requirement is stressed in *Ry.* v. *Thompson,* 136 Va. 597, as follows: "It should and must be emphasized that a plaintiff is not entitled to recover under this doctrine upon a mere peradventure. He has no right to hold the defendant liable merely upon showing that perhaps, if the defendant's agents had responded properly, promptly, instantaneously, he might have been saved. The burden is upon him to show affirmatively by a preponderance of the evidence, which convinces the average mind that by the use of ordinary care, after his peril was discovered, there was in

fact a clear chance to save him. It is insufficient to show that there was a mere possibility of so doing.'' It seems to me that under these authorities the interval which defendant, with imputed knowledge, had to avert the tragedy was too brief for aught but speculation and does not sustain affirmatively a further imputation of *opportunity in fact*.

The plaintiff's case was tried on two theories: one, that Mrs. Smith was not in fact negligent, and the other that, if so, the defendant had the last clear chance to avoid the accident. The question of her negligence was submitted to the jury with involved instructions of law. (Plaintiff's instructions 7 and 8.) This seems prejudicial error to me. There was no evidence whatever supporting the theory that Mrs. Smith was not negligent, yet the jury could well have inferred from the instructions that the law held her blameless.

The majority cites *Ambrose* v. *Young* and *Jefferies* v. *Ashcraft* in support of its position as to the voluntary testimony indicating that the defendant carried insurance. Witnesses for defendant stated that Mrs. Smith came almost immediately from behind the bus right into the path of the automobile. There is no preponderance of the witnesses numerically for plaintiff, and no specific reason for giving credence to one set of witnesses over the other. This is illustrated by the fact that a former trial resulted in a hung jury. These circumstances differentiate this case from *Ambrose* v. *Young* and *Jefferies* v. *Ashcraft,* and I am of opinion that evidence of the defendant having insurance did prejudice him before the jury, no matter how casually that fact appeared.

As I view this unfortunate affair, no circumstance impressed on the defendant any special care for Mrs. Smith or justifies the majority in denying the defendant the ordinary presumption in favor of a motorist. The duty of each to look out for the other was correlative. Each was equally capable of exercising care, and each was equally charged with common knowledge of the use of the highway (at the point of collision) by pedestrians and automobiles. The inattention of each was not successive, but was concurrent until too late to prevent the accident. Neither saw the other (in time) for the identical reason that neither looked for the other; and there was

no last clear chance in fact open to one, that was not open to the other. If defendant was negligent, Mrs. Smith was equally negligent, and her negligence would have prevented a recovery under the rule of contributory negligence as it has heretofore been pronounced in this jurisdiction.

Accordingly I dissent.