## CHRIS P., SAMONTHIA, AND MYRL JACOBSEN v. E. P. AHASAY AND ANOTHER.[1]

February 3, 1933.

Nos. 29,366, 29,367, 29,368.

*B. W. Wilder, A. C. Johnston,* and *F. M. Miner,* for appellants.
*W. A. Blanchard* and *Orr, Stark, Kidder & Freeman,* for respondents.

LORING, JUSTICE.

These three cases grew out of an automobile accident occurring at the intersection of Western and University avenues in the city of St. Paul about four o'clock in the morning of November 7, 1931. The two Jacobsen women were passengers in an automobile which was struck by the defendants' car, and they seek to recover damages. The suit by Chris P. Jacobsen is to recover for loss of services and for expenses in connection with the injuries to his wife, Samonthia. The trial court submitted the question of the contributory negligence of the Jacobsen women to the jury, which found in favor

[1]Reported in 246 N. W. 670.

of the defendants, and the cases came here upon appeal from the judgments entered pursuant to the verdicts after the denial of plaintiffs' motions for a new trial, the sole question presented being whether or not the court erred in submitting the question of contributory negligence to the jury. There appears to be no doubt about the negligence of the defendants, and hence if the women were free from contributory negligence as a matter of law a new trial must be ordered.

The defendants are entitled to have the evidence viewed from the standpoint most favorable to them. The women were passengers in a Studebaker coach in which seven people were riding, and it is the contention of the defendants that the car was overloaded and that consequently that fact was an element which was to be considered by the jury in determining whether the women were guilty of contributory negligence. We find nothing in the record which indicates that the presence of the seven passengers in the car in any way interfered with the driver's ability to handle it or to keep a lookout. The next contention of defendants is that the driver entered University avenue at a rate of speed higher than that permitted by statute at a blind corner and that he passed the boulevard stop sign without stopping. The car in which the plaintiffs were riding was going south on Western avenue, and when it entered University avenue the driver and Samonthia Jacobsen saw the defendants' car approaching from the right at such a distance that they were sure they could pass safely over the intersection before the arrival of the defendants' car therein. They were struck after the front end of their car was beyond the south curb line of University avenue. Apparently the defendants' car made no effort to slow down or to deviate from its course in order to avoid the collision. The driver says he thought he saw the car in which the plaintiffs were riding stop at the boulevard stop sign. It seems that he, like many other drivers upon a street protected by boulevard stops, assumed that anyone enters such a street from a side street at peril; whereas the rule as laid down by this court is that after a driver has stopped for the boulevard sign he has

the same right at the intersection that he would have at any unmarked intersection. Bell v. Pickett, 178 Minn. 540, 227 N. W. 854.

It is not quite clear to us what the defendants contend should have been the conduct of the Jacobsen women in order to measure up to ordinary care. We cannot see what they could have done by way of protest or otherwise in regard to the passage of the stop sign or the entry into the intersection which would have changed the conduct of the driver or have prevented the accident. The highest speed claimed by the defendants for the car in which the Jacobsen women were riding is 20 to 25 miles per hour. At that time University avenue had not been widened. It appeared like any other street, and there is no claim that either of the Jacobsen women saw the boulevard stop sign or were presently aware that they were entering University avenue. It is true that if, as defendants claim, they were going faster than 15 miles per hour into the blind intersection, the driver was prima facie guilty of negligence; but after they were into the intersection there was certainly nothing that the women could do about that feature of his driving. They could not correct it. Apparently it had led them into no dangerous situation, because they were all of the opinion that they had ample time to cross ahead of the defendants' car, which must have been going at a much higher rate of speed than that permitted by ordinary prudence. They had a right to assume until it appeared to the contrary that the defendants would operate their car with the care ordinarily displayed by reasonably prudent persons and that they would comply with the regulations applicable to the use of highways. Primock v. Goldenberg, 161 Minn. 160, 200 N. W. 920, 37 A. L. R. 484; Bell v. Pickett, 178 Minn. 540, 227 N. W. 854. Any protest from them which would have resulted in a slower pace by their driver would most certainly have resulted in a more disastrous collision. As it was, they were partly beyond University avenue when hit. Taking the record as a whole, we find no evidence upon which a finding of contributory negligence could be legitimately based. Wicker v. North States Constr. Co. Inc. 183 Minn. 79, 235 N. W. 630; Engholm v. Northland Trans. Co. 184

Minn. 349, 238 N. W. 795; Hall v. Gillis, 188 Minn. 20, 246 N. W. 466.
Reversed.