## NIELSEN v. RICHMAN.

### No. 11700.

Circuit Court of Appeals, Eighth Circuit.

Aug. 26, 1940.

Rehearing Denied Sept. 16, 1940.

Writ of Certiorari Denied Nov. 18, 1940.

See 61 S.Ct. 172, 85 L.Ed. ——.

George J. Danforth, of Sioux Falls, S. D. (G. J. Danforth, Jr., of Sioux Falls, S. D., on the brief), for appellant.

Holton Davenport, of Sioux Falls, S. D. (Ellsworth E. Evans, of Sioux Falls, S. D., on the brief), for appellee.

Before WOODROUGH and THOMAS, Circuit Judges, and BELL, District Judge.

BELL, District Judge.

This is an action by appellant against appellee for damages resulting from the death of Pearl Nielsen which was caused by injuries sustained in an automobile accident in the city of Colman, South Dakota. The parties will be designated as in the court below.

At the conclusion of the plaintiff's evidence the court directed a verdict for the defendant on the ground that the decedent was guilty of contributory negligence. A motion for a new trial was made and overruled, and an appeal was taken from the judgment entered on the directed verdict.

Therefore, the question involved is whether the court was justified under the evidence in the case in holding as a matter of law that contributory negligence of the decedent precluded a recovery.

In considering this question, a number of well-settled principles should be observed: (1) All facts that the plaintiff's evidence reasonably tends to prove, and all inferences that reasonably may be drawn therefrom, must be resolved in her favor. Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; Elzig v. Gudwangen, 8 Cir., 91 F.2d 434; Columbian National Life Insurance Company v. Comfort, 8 Cir., 84 F.2d 291. (2) The weight of uncontradicted evidence and the credibility of the witnesses who gave it usually are questions for the determination of the jury. Elzig v. Gudwangen, supra. (3) It is only where the evidence is so overwhelmingly on one side as to preclude an opportunity for reasonable minds to differ that the court should direct a verdict. Gunning v. Cooley, supra; Southern Pacific Company v. Pool, 160 U.S. 438, 16 S.Ct. 338, 40 L.Ed. 485; Svenson v. Mutual Life Insurance Company, 8 Cir., 87 F.2d 441. (4) Contributory negligence usually is a question of fact for the jury.

Montgomery Ward & Co. v Snuggins, 8 Cir., 103 F.2d 458; Egan Chevrolet Company v. Bruner, 8 Cir., 102 F.2d 373, 122 A.L.R. 987; Phillips Petroleum Company v. Miller, 8 Cir., 84 F.2d 148; Pryor v. Strawn, 8 Cir., 73 F.2d 595. (5) The burden of proving contributory negligence is on the party alleging it. Cook Paint & Varnish Company v. Hickling, 8 Cir., 76 F.2d 718; Reinschmidt v. Hirsch, 65 S.D. 498, 275 N.W. 356.

The accident happened at the intersection of state highway number 34 and Main Street in the city of Colman, South Dakota. The highway runs in an easterly and westerly direction and is paved with a concrete pavement twenty feet wide. Main street runs in a northerly and southerly direction, has a gravel surface, and intersects but does not extend south of the highway. Both are comparatively level at the intersection, but the highway east of the intersection inclines slightly upward, reaching its greatest elevation about a quarter of a mile east of the intersection.

There are three gasoline service stations at the intersection, one on the northeast corner, one on the northwest corner, and one on the south side of the highway opposite the end of Main Street. The intersection is within the corporate limits of Colman and about four blocks south of the business district. A row of trees stand on the north side of the highway east of the intersection about six feet from the property line. A telephone pole and three signs also stand on the northeast corner substantially in line with the trees. Highway number 34 is an arterial thoroughfare and there is a stop sign on the west side of Main Street 86 feet north of the north line of the highway.

Late in the afternoon of January 13, 1939, Pearl Nielsen, the decedent, nineteen years of age, drove her automobile in a southerly direction on Main Street. Her sister, Dena, sixteen years of age, occupied a place in the front seat at her side. The decedent was an experienced driver and was familiar with the intersection. She stopped at the stop sign and then drove slowly forward at not to exceed ten miles per hour. When she was 25 feet to 30 feet north of the pavement on highway 34, she and her sister looked to the east and to the west and saw no approaching vehicles. The decedent, according to the testimony of Dena, made a remark, "I don't see anybody, do you?" She contin-

ued forward at about ten miles per hour, turning to the left, heading in a southeasterly direction, and when her automobile was about half over the center line of the pavement it was struck by an automobile driven by the defendant who was driving in a westerly direction on the highway. The point of contact of the automobiles was on the south side of the highway and about twelve feet east of the east line of the intersection. Apparently, decedent failed to escape by a fraction of a second.

On approaching the highway from the north on Main Street the row of trees and other obstructions blend together so as very thoroughly to obstruct the view of a driver of the highway to the eastward when the eyes are about 30 feet north of the pavement and until the eyes reach a point within about 20 feet of the pavement, except for a short distance east of the intersection; that is, there is a distance of approximately 10 feet when the view of a driver approaching the highway on Main Street is obstructed. At a point 25 feet north of the pavement the driver could see eastward of the intersection 130 feet, and in moving southward the range of visibility of the highway east of the intersection increased. One witness testified that at a point 20 feet north of the pavement a driver could see to the eastward 380 feet and when 10 feet north of the pavement the driver could see to the top of the hill a quarter of a mile away. Another witness said that from 20 feet to 25 feet north of the pavement he could see to the eastward about 150 feet.

The defendant, on cross examination under the statute, said: "I saw a car coming down Main Street approaching the intersection * * *. It was about 25 to 50 feet away from the north line of the intersection. * * * I was probably 125 to 150 feet east of the east line of the intersection. The car was coming at a slow rate of speed. I judge about ten miles an hour. I did continue to see the car until the time of the collision, and kept my eye on that car all the time. That car never changed its speed at all. It kept right on going. * * * I blew my horn. * * * I took my foot off the gas but did not put on the brake. And this other car was coming into that intersection without any visible signs of stopping there. * * * Just before the cars collided, I turned my car to the left to the south so that when the crash came my car was probably going southwest. Somewhere along there I put on my brakes. * * * I think I was 30 to 40 feet away from the other car when I put on my brakes. It was right at the time I sounded my horn. * * * The Nielsen car was 10 or 15 feet from the pavement when I first realized it was not going to come to a stop before it went on to the pavement."

Leland, a witness to the accident and the operator of the station on the northwest corner, said he was standing 50 to 60 feet north of the pavement, that he happened to look to the east and saw the defendant approaching about 600 feet east of the intersection at a speed of approximately 50 to 55 miles an hour, that he did not reduce his speed until just before the crash, that when the Nielsen car reached the line of trees it was going about 10 miles an hour and the other car then was about 250 feet to 300 feet away, that when the crash came he went over and the Nielsen automobile was on the south shoulder of the highway 40 feet to 50 feet from the point of impact and the defendant's automobile was against a tree east of the gasoline station on the south side of the highway.

Leland further testified that the Nielsen automobile was 35 to 40 feet south of the stop sign when he first saw it and that it did not come to a stop until the crash; that he saw the defendant's automobile swerve to the left, that it was headed in a southwesterly direction and the decedent's automobile was headed in a southeasterly direction at the time of the collision and the latter was about half way across the black line—the center stripe—on the highway; that the tire was torn from the left front wheel of the Nielsen automobile and the rim had made a cut in the pavement about 18 inches south of the center line.

Photographs of the automobiles in evidence in the case show that there must have been a terrific impact when they came together and that the left front corner of defendant's automobile struck the left side of decedent's automobile at the left front wheel. Other photographs show that from 20 feet to 30 feet north of the pavement the view of a driver of an automobile on Main Street headed in a southerly direction is almost entirely obstructed of the highway to the left, except near the intersection.

In addition to the principles of common law, we are concerned with statutes of the state of South Dakota, as follows:

"The State Highway Commission with reference to state highways and local authorities with reference to highways under their jurisdictions are hereby authorized to designate main traveled or through highways by erecting at the entrances thereto from intersecting highways, signs notifying drivers of vehicles to come to a full stop before entering or crossing such designated highways, and whenever any such signs have been so erected it shall be unlawful for the driver of any vehicle to fail to stop in obedience thereto. * * *" Sec. 44.0321, SDC 1939.

"When two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right except as otherwise provided in section 44.0319. The driver of any vehicle traveling at an unlawful speed shall forfeit any right of way which he might otherwise have hereunder. The driver of a vehicle approaching but not having entered an intersection shall yield the right of way to a vehicle within such intersection * * *." Sec. 44.0318, SDC 1939.

"Upon all highways of sufficient width, except upon one way streets, the driver of a vehicle shall drive the same upon the right half of the highway * * *." Sec. 44.0309, SDC 1939.

The South Dakota Statute further provides that it shall be prima facie unlawful for any person to exceed forty miles an hour under the circumstances involved in this case.

It is necessary to consider the respective rights of the decedent and the defendant as they approached the intersection where the collision occurred. The defendant was driving on an arterial highway while the decedent approached and entered the intersection on a public street in the city of Colman. The statute required her to come to a full stop before entering the highway. She was required to look and not to drive her automobile into the intersection if approaching traffic made it dangerous for her to do so. In other words, she was required to use reasonable care under the existing circumstances. On the other hand, the defendant was not entitled to choose his speed and ignore traffic entering from public streets and roads merely because he was traveling on an arterial highway. Under the statute, it was prima facie unlawful for him to drive in excess of forty miles per hour; it was his duty to yield the right-of-way to the plaintiff, who was on his right, if the two vehicles entered the intersection at the same time, or if the decedent was within the intersection when the defendant reached it; if the defendant were traveling at an unlawful speed, he forfeited any right-of-way he otherwise might have had; and he was required to drive to the right of the center of the highway. It likewise was his duty to use ordinary care.

The traffic laws of the state must be considered as a whole and the sections harmonized. The provision requiring a full stop at an arterial highway does not transcend the other provisions of the traffic laws. The provision requiring a driver to stop at an arterial highway has no more force and effect than the other provisions regulating the use of the highways. In many jurisdictions it has been held that drivers on an arterial highway have no superior rights over drivers on public roads entering it after they have stopped in obedience to the stop sign. In other words, the driver of a motor vehicle, on approaching an arterial highway, is required to stop; and, with that exception, the traffic laws prescribing right-of-way privileges are the same as at crossings where there is not a favored highway. McCulley v. Anderson, 119 Neb. 105, 227 N.W. 321; Dikel v. Mathers, 213 Iowa 76, 238 N.W. 615; Johnston v. Selfe, 190 Minn. 269, 251 N.W. 525; Jacobsen v. Ahasay, 188 Minn. 179, 246 N.W. 670; Bell v. Pickett, 178 Minn. 540, 227 N.W. 854; Anderson v. Detroit Motorbus Company, 239 Mich. 390, 214 N.W. 172.

The Supreme Court of Nebraska in the McCulley case, supra, said [119 Neb. 105, 227 N.W. 324]:

"With the exception of a required stop at an arterial highway, the principles of law applicable thereto as to right of way privileges are the same as those which apply to other streets. * * *

"On authority and reason an ordinance designating a street as an arterial highway and requiring drivers of motor vehicles to stop before entering it from intersecting thoroughfares does not grant an exclusive privilege to drivers on the favored artery or require those crossing it to do so at their peril regardless of the duty of motorists on all public highways to obey traffic regulations and exercise due care to protect the rights of others. Where a motorist on a nonfavored street stops at an

intersecting arterial highway when the intersection is clear of traffic, looks to the right and left for approaching vehicles, acting as a reasonably prudent person in the exercise of due care would act in the belief that he has time and opportunity to safely cross, he is not liable for negligence merely because he attempts to do so."

The Supreme Court of Iowa in Dikel v. Mathers, supra, said [213 Iowa 76, 238 N. W. 617]: "Of course, a traveler on the boulevard has a right to expect an operator of a motor vehicle on the intersecting street to stop at the sign. With that expectation in mind, the operator of the automobile on the boulevard can proceed forward while the other traveler on the intersecting street stops at the sign. After a stop has been made at the sign on the intersecting street, however, that operator of the vehicle has a right to carefully approach and enter the intersection, and other travelers, who at that later time are likewise proceeding toward the intersection, must observe the right-of-way rule, * * *."

The Supreme Court of Minnesota in Johnston v. Selfe, supra, stated the rule, as follows [190 Minn. 269, 251 N.W. 527]:

"The boulevard stop signs do not require cars to enter the arterial street at their peril but only to exercise ordinary care with regard to the traffic on the through street before entering thereon. * * *

"The operators of cars upon such through streets are bound to operate them with reasonable care as to the traffic entering from the side streets. * * *

"After the Hall car had stopped for the intersection, the usual rules in regard to right of way applied. Jacobsen v. Ahasay, 188 Minn. 179, 246 N.W. 670. Section 2720-21, Mason's Minn.St.1927, which authorizes the establishment of arterial highways does not in any way modify other statutes which control right of way and speed. * * *

"If defendant was traveling at an unreasonable, improper, and unlawful speed, he forfeited his right of way under the statute, * * *."

We do not find a construction of the South Dakota Statutes by the Supreme Court of that state, but the authorities from other jurisdictions might be greatly extended.

■ The statute does not say where the driver shall stop. The sign itself is a command of the law to stop and it would seem that ordinarily a stop made at the sign would be a compliance with the statute. Certainly, it cannot be said that drivers are negligent as a matter of law if they do not stop at the particular point that will give them the best view. In Anderson v. Detroit Motorbus Company, supra, where the driver stopped at a sign forty feet back from the street line, the court held that there was a substantial compliance with the statute. In Pline v. Parsons, 231 Mich. 466, 204 N.W. 131, the driver stopped at a sign seventy-six feet from the pavement and it was held that the question of contributory negligence in the case, very similar to the one under consideration, was for the jury. In Nelson v. Klemm, 210 Wis. 432, 245 N.W. 657, the court held that where the driver made the last observation at a point seventy to eighty feet from the intersection, the question of contributory negligence was for the jury. See also Adams v. Canfield, 263 Mich. 666, 248 N.W. 800; Calhoon v. D. C. & E. Mining Company, 202 Mo.App. 564, 209 S.W. 318; Page v. Cudahy Packing Company, 31 Cal. App.2d 282, 87 P.2d 913; Rose v. Meyer, 303 Ill.App. 365, 25 N.E.2d 413.

■ There was evidence that the decedent stopped at the sign, and further evidence that both she and her sister looked in both directions when they were 25 feet north of the pavement. Whether she stopped, and whether her conduct was such as to amount to a substantial compliance with the statute, were questions for the jury under the evidence in the case.

■ Of greater concern is the action of the decedent when she drove into the intersection. When her eyes were 25 feet north of the pavement the front end of her automobile had entered the intersection and she perhaps could see to her left a distance of 135 feet from the intersection. By the time the front end of her automobile had reached the pavement she could see a quarter of a mile to her left. Leland said when she was 25 feet north of the pavement the defendant was 250 feet to 300 feet east of the intersection. The defendant said that decedent was 25 feet to 50 feet from the north line of the intersection when he was 125 feet to 150 feet, or possibly 200 feet, east of the intersection. The decedent was driving slowly—not to exceed ten miles an hour. A conclusion that the defendant was driving at from fifty to fifty-five miles an hour would be sustained by the evidence. Obviously, the defendant was driving at

a much faster speed than the decedent, and when she reached the pavement the jury might have found that the defendant was as much as 200 feet east of the intersection. He never got closer to it than twelve feet, the point of collision. The decedent may have seen the defendant approaching and believed, because of his distance away, that she had ample time to cross to the south side of the pavement. In this she may have been perfectly justified. She almost succeeded; her car was half across the center line of the pavement and was struck on the south side thereof. If the defendant had been driving at a lawful speed, she might have had time to clear the north half of the pavement and there might have been no collision. The decedent had a right to assume that the defendant was driving at not to exceed forty miles per hour. A motorist has a right to assume that the users of a highway will observe the traffic rules and regulations and will otherwise exercise reasonable care. Blodgett v. Pinkerton Tobacco Company, 6 Cir., 79 F.2d 945; Jacobsen v. Ahasay, supra; Murphy v. Hawthorne, 117 Or. 319, 244 P. 79, 44 A.L.R. 1397; Weil v. Kreutzer, 134 Ky. 563, 121 S.W. 471, 24 L.R.A., N.S., 557; Hale v. Cooper, 271 Mich. 348, 261 N.W. 54, 263 N.W. 769; Swoboda v. Brown, 129 Ohio St. 512, 196 N.E. 274, 42 C.J., Sections 584, 701, 706 and 708.

 This is not a case where a driver from a side road carelessly or wantonly drives into an intersection on an arterial highway in front of an approaching motorist. The decedent knew that she was entering the intersection first and that under the statute she had the right-of-way. The jury would have been justified in finding that when the decedent reached the intersection the defendant was a sufficient distance away to justify her in believing that she had ample time to cross to the south side of the highway, that it was the excessive speed of the defendant and his act of turning to the left, across the center of the highway, that caused the collision, that it was not due to any act of negligence on the part of decedent, and that if the defendant had turned as much to the right as he did to the left, there might have been no collision. The photographs and other evidence in the case show that he could have turned to the right without danger to himself. Under the evidence, the jury might have found the decedent guilty of contributory negligence, but it

was not required to do so and as we view the evidence the issue of contributory negligence clearly was a question for the jury. It is undisputed that the evidence is quite sufficient to sustain a finding that the defendant was negligent.

 This case might have been submitted to the jury on the theory that it was the duty of the defendant in driving his automobile upon the highway to exercise reasonable care by keeping a lookout ahead, by driving at such speed and in such manner as to have his automobile under reasonable control so as to be able to stop at the intersection when he saw, or by the exercise of ordinary care could have seen, the decedent in the act of driving into said intersection and in a position of peril, and if the defendant had used such care he could have stopped, or reduced his speed, or turned to the right and thus have avoided the accident, but failed to do so, then the plaintiff was entitled to recover. DeNoma v. Sioux Falls Traction System, 39 S.D. 10, 162 N.W. 746. The testimony of the defendant alone is sufficient to justify this conclusion. He said that he was 125 feet to 150 feet east of the intersection and had slowed down to less than fifty miles an hour when he saw the decedent approaching the crossing, that he kept his eyes on her car all the time, that when it was 10 feet to 15 feet from the pavement he realized it was not going to stop, that he sounded his horn and applied his brakes when about 30 feet to 40 feet from the point of collision, and then he turned to the left to avoid the collision. The decedent, at slow speed, moved from a position 10 feet to 15 feet north of the pavement in a southeasterly direction to the point of collision south of the center of the pavement while the defendant traveled many times that distance realizing that the decedent would not stop, and yet he did not apply his brakes until he was within 30 feet or 40 feet of her automobile. Knowing, as he said he did, that she was not stopping and was in a position of peril, he nevertheless made no effort to stop until it was too late when he might have done so; and he, moreover, turned to the left instead of to the right. The jury could have found from his own story that he had time to think and an opportunity to avoid the collision by merely keeping to his own side of the highway or at least by veering slightly to the right, and that his conduct was the final, decisive cause of the collision.

If it is assumed that the decedent was guilty of contributory negligence, the case should have been submitted to the jury on the last clear chance doctrine, which has been recognized in South Dakota. DeNoma v. Sioux Falls Traction System, supra; Miller v. Sioux Falls Traction System, 44 S.D. 405, 184 N.W. 233; Wolff v. Stenger, 59 S.D. 231, 239 N.W. 181. Under this doctrine a plaintiff who has negligently placed himself in a position of imminent peril and is either unconscious of the situation or unable to avoid the danger, or both, may nevertheless recover damages of the defendant who negligently inflicts the injury, if the defendant could have avoided the injury after discovering the plaintiff's peril. Kansas City Southern Railway Co. v. Ellzey, 275 U.S. 236, 48 S.Ct. 80, 72 L.Ed. 259; Linde Air Products Company v. Cameron, 4 Cir., 82 F.2d 22; Wheelock v. Clay, 8 Cir., 13 F.2d 972; Walker v. East St. Louis & S. Ry. Co., 8 Cir., 25 F.2d 579; Smith v. Gould, 110 W.Va. 579, 159 S.E. 53, 92 A.L. R. 28, and note.

In Wolff v. Stenger, supra, the Supreme Court of South Dakota said [59 S.D. 231, 239 N.W. 184]: "The tenor of the doctrine is not to exonerate a party defendant from whom damages are claimed, but to compel the payment of damages by a negligent party defendant in certain cases notwithstanding the contributory negligence of the party plaintiff. By virtue of the doctrine a defendant whose negligent act was the final decisive cause of the accident may under certain circumstances be liable to the plaintiff even though the plaintiff had at an earlier stage of the proceedings been guilty of some negligence upon his own part in placing himself within the reach of the effects of the defendant's negligence. This doctrine necessarily assumes negligence on the part of the defendant, and contributory negligence on the part of plaintiff, and has no application whatever except upon that assumption.' "

The testimony of the defendant above quoted is quite sufficient to show that the facts of this case meet every requirement of the last clear chance doctrine.

Accordingly, the case is reversed and remanded for a new trial.

WOODROUGH, Circuit Judge (dissenting).

This case presents the situation where a person drives a car out of a side road and makes a left turn onto the concrete of an arterial highway. She moves her car at a slow pace across the path of oncoming traffic and is killed in the ensuing collision. Her speed was about ten miles an hour and the driver who struck her was doubtless going between fifty and sixty—about five or six times as fast. While she drove ten or twelve feet across the concrete to the point of collision, he drove fifty to seventy feet. Necessarily he was that close upon her when she drove onto the concrete in front of him. It seems to me that her act of driving slowly onto the concrete across his path was the act of negligence that caused the collision and death. If anyone will take a car and drive it up to the edge of the concrete of a well-travelled highway, I do not think he will fail to observe the mortal danger involved in slowly driving across the path of closely oncoming traffic unless he is paying no attention and is negligent. That being so, I think the trial court properly directed the jury peremptorily. Any driver of experience knows better than to attempt slow left turns onto the concrete of arterial highways in front of closely approaching traffic. I see no reason why courts should be blind to the gross negligence of such an act, or why they should permit parties guilty of such negligence to recover damages for the injuries they bring upon themselves. Nor should the common sense of it be blurred by misapplying a doctrine of last clear chance.