## JOHN FICKLING v. RUDY NASSIF AND ANOTHER.[1]

November 22, 1940.

No. 32,459.

*George T. Havel* and *Edwin C. Kraus,* for appellant.
*Moonan & Moonan* and *H. G. Dressel,* for respondents.

HOLT, JUSTICE.

Action to recover damages resulting from a collision of two motor vehicles at a highway intersection. The court

[1]Reported in 294 N. W. 848.

directed a verdict in favor of defendants, and plaintiff appeals from the order denying his motion for a new trial.

The record discloses that state aid highways No. 4 and No. 37, in Le Sueur county, intersect at right angles about a mile north of the village of Le Center. No. 4 runs north and south and No. 37 east and west. Shortly before noon, June 26, 1939, a bright, clear day, plaintiff on his motorcycle was approaching this intersection from the north as defendant Nassif, driving the loaded gravel truck of defendant Brown, was approaching it from the west. Both highways were graveled and in good condition. Highway No. 4 has no stop sign, but No. 37 has two such signs about 35 feet from the intersection for east-and-west travel. The roadways on both highways are below the level of the surrounding land. Plaintiff estimated the bank to his right as he approached the intersection at its highest point to be about seven or eight feet above the roadway. Both drivers were well acquainted with the intersection. There is no dispute as to what has been stated thus far.

Plaintiff testified that he was approaching the intersection at a speed of from 30 to 40 miles an hour; that when, within about two rods thereof, a first view of No. 37 to the west for about two to three rods was had, he saw Nassif and that he was not going to stop for the stop sign but was coming at a speed of from 30 to 40 miles an hour, and, realizing that the truck could not be stopped until into the intersection, he applied his brake; that he experienced some difficulty from loose sand and was unable to stop despite his effort to avoid a collision with the oncoming truck, which did not slacken speed; that as he veered to the left the motorcycle struck the cap of the left front wheel of the truck and plaintiff was hurled over the hood, bruised, and the motorcycle damaged. Defendant Nassif's testimony was that he stopped the truck at about the stop sign, which is located 35 feet west of the intersection, shifting the gear into super-low, and, seeing no vehicle coming upon

No. 4, of which he had then a view to the north of from 50 to 75 feet, he proceeded into the intersection in super-low gear, the maximum speed of which is three miles an hour; that as he came into the intersection he saw plaintiff coming some 175 to 200 feet north thereof, but could not tell at what speed until he came within 15 feet of the truck, when he noticed that the speed was so fast that he, Nassif, jumped from the cab toward the oncoming motorcycle; that the truck, unguided and in super-low gear, continued in a southeasterly direction across a ditch or depression and up a ridge and through a fence, coming to rest some 90 feet from the place of collision. This is in main the version of the drivers of the colliding vehicles. The corroboration of either was clearly for the jury. A brother of Nassif, driving a gravel truck for defendant Brown, was returning therewith empty, going west on No. 37, stopped at the stop sign on the east of the intersection, and was waiting to speak to his brother, whom he recognized coming up to the stop sign from the west, but his attention was diverted to the motorcycle which he heard coming, so he was not able to testify whether or not his brother stopped for the stop sign. However, he did say that the truck was moving over the crossing, when the impact came, at a speed of from three to four miles an hour. The motorcycle had a speedometer, with one hand indicating the highest speed attained by the vehicle during a trip. It is admitted that this hand indicated 63 miles; but a jury might take plaintiff's testimony as true that the high speed thus registered was a day or so previous to the collision, and the hand had not been released since that speed was attained.

Although the court directed a verdict for defendants solely on the ground of plaintiff's contributory negligence, there should be no reversal if on the entire evidence a verdict in plaintiff's favor could not stand. Brulla v. Cassady, 206 Minn. 398, 289 N. W. 404. However, it is reasonably clear that if the jury accepted plaintiff's testimony as true

that Nassif drove his loaded gravel truck into the intersection without stopping for the stop sign and at a speed of from 30 to 40 miles an hour, there was a case for the jury upon the issue of defendant's negligence. So the only question presented by this appeal is: Does the record show as a matter of law that there was negligence on the part of plaintiff that contributed to cause the collision? It seems to us it is for the jury to determine whether or not it is negligence to drive a motorcycle at a speed of 30 to 40 miles an hour up to an intersection protected by stop signs when the first view the cyclist has of the intersecting road to either east or west cannot be had before he is within two rods of the intersection. In passing upon plaintiff's negligence the jury might consider that plaintiff had the right to assume until discovering the contrary that motor vehicles traveling upon No. 37 would heed the stop signs. Guthrie v. Brown, 192 Minn. 434, 436, 256 N. W. 898; Pearson v. Norell, 198 Minn. 303, 269 N. W. 643. The two drivers of these motor vehicles were in utter conflict as to very material facts in respect to the collision. Besides, the testimony of each may be, as to some matters, so affected by the injury sustained or threatened as to be found wholly unreliable by a jury. For instance, plaintiff testified that the impact hurled him over the hood of the truck, yet his bodily injuries were not severe; and Nassif in a frenzy to escape jumped out of the cab towards the oncoming wobbling motorcycle.

Defendant has the burden of establishing the defense of contributory negligence, and hence where there is conflict in the evidence upon matters of material bearing on a plaintiff's conduct, a jury issue is presented. The rule is thus stated in Dunnell, Minn. Dig. 1932 Supp. § 7033: "It is only in the clearest cases when the facts are undisputed and it is plain that all reasonable men can draw but one conclusion from them, that the question of contributory negligence becomes one of law for the court." Cases from

this court too numerous to here set out are cited. Among them [see Vol. 4, *Id.*] is Klare v. Peterson, 161 Minn. 16, 18, 200 N. W. 817, 818, wherein there was a collision between a motorcycle and a gravel truck. Judge Lees, in speaking for the court, said:

"We have said again and again that it is only where the evidence of contributory negligence is so clear as to leave no room for an honest difference of opinion among reasonable men that the court can enter upon the province of the jury and direct a verdict for the defendant."

But defendants refer to these two provisions of the motor vehicle law, 3 Mason Minn. St. 1940 Supp. § 2720-178(c):

"The driver of every vehicle shall, consistent with the requirements drive at an appropriate reduced speed when approaching and crossing an intersection or railway grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, and when special hazards exist with respect to pedestrians or other traffic or by reason or [of] weather or highway conditions."

And § 2720-257(a):

"The driver of a motor vehicle shall when reasonably necessary to insure safe operation give audible warning with his horn but shall not otherwise use such horn when upon a highway."

However, the above and other provisions of the motor vehicle law are to be considered, so far as civil actions are concerned, with § 2720-291(b) thereof, reading:

"In all civil actions, a violation of any of the provisions of this act by either or any of the parties to such action or actions shall not be negligence per se but shall be prima facie evidence of negligence only."

Such being the statute, we think the issue of plaintiff's contributory negligence was clearly for the jury.

Defendants also cite and rely on Rosenau v. Peterson, 147 Minn. 95, 179 N. W. 647. That case was one of a wholly blind intersection, where neither driver could have a view of the other until both were actually in the intersection. Jacobsen v. Ahasay, 188 Minn. 179, 246 N. W. 670, and Johnston v. Selfe, 190 Minn. 269, 251 N. W. 525, also cited by defendants, do not involve a directed verdict against a plaintiff upon the sole ground of contributory negligence. In the former it was held error to submit that issue because there was no evidence of contributory negligence, and in the latter, plaintiff, a guest passenger of the driver, was held exonerated of contributory negligence by the jury upon sufficient evidence. In both cases stop signs controlled the right of way. From other jurisdictions defendants refer to Smith v. Lamb, 220 Iowa, 835, 263 N. W. 311; Owen Motor Freight Lines v. Russell's Adm. 260 Ky. 795, 86 S. W. (2d) 708; Hobbs v. Employers' Liability Assur. Corp. (La. App.) 188 So. 191. The Smith case was tried to the court, and the finding was that plaintiff's and defendant's negligence contributed to the collision, hence recovery was denied upon plaintiff's cause of action as well as upon defendant's counterclaim. A mere glance at the issues and facts in the second mentioned case shows that it has no bearing upon the sole question presented by this appeal. In the Hobbs case there was no occasion to consider a directed verdict by reason of the driver's contributory negligence, for the plaintiffs were guest passengers of the driver and a recovery by them was sustained.

The order is reversed.

MR. CHIEF JUSTICE GALLAGHER took no part.