# WILLIAM ANDERSON, A MINOR, BY WILLIAM F. ANDERSON, HIS FATHER AND NATURAL GUARDIAN, AND ANOTHER v. KENNETH A. EIKELAND.

123 N. W. (2d) 316.

July 3, 1963—No. 38,741.

*Schultz & Springer* and *Arnold E. Kempe,* for appellants.

*Mordaunt, Walstad, Cousineau & Hagglund* and *John H. Mordaunt,* for respondent.

ROGOSHESKE, JUSTICE.

Appeal from an order denying plaintiffs' motion for judgment notwithstanding the verdict or in the alternative for a new trial. The questions presented are concerned principally with the court's instructions covering statutory right-of-way rules as applied to a unique intersection.

The action arises out of a collision between a 1955 Ford automobile owned and operated by defendant and a motorcycle owned and operated by plaintiff William Anderson, the 17-year-old student son of plaintiff William F. Anderson who was seriously injured in the collision. The collision occurred in West St. Paul on Sunday, July 31, 1960, at approximately 6:30 p. m. under admittedly perfect driving conditions, at the place where Dodd Road, a straight highway running approximately northeast-southwest, is intersected by Ohio Street and where Hurley Street joins and terminates to form what might be described as a unique intersection. A reduced photocopy of a scale diagram, which was introduced as plaintiffs' exhibit A, is reprinted and should aid in visualizing the scene. As indicated on the diagram, Ohio Street intersects Dodd Road on the southeast at a 90-degree angle. At a point a short distance northeast, Ohio Street extends due north of Dodd Road, intersecting at approximately a 45-degree angle. The evidence, including the diagram and photographs, provides the basis upon which the court concluded that this created a jog in Ohio Street as it crosses Dodd Road. As Dodd Road is a through street, there are stop signs on what might be described as Ohio Street southeast and Ohio Street north, as well as Hurley Street, regulating traffic entering Dodd Road. For one proceeding southwesterly on Dodd Road, there is a slight upward grade; and for one proceeding northwesterly on Ohio Street southeast, low overhanging branches of trees may, to some extent, interfere with his view to the right down Dodd Road.

Defendant, a 22-year-old schoolteacher, was driving his automobile on Ohio Street southeast in a northwesterly direction, intending to cross Dodd Road and to continue on Ohio Street north to reach his home

Plaintiff's Exhibit A

64

which was located a short distance from the scene. Plaintiff William Anderson was driving his motorcycle in a southwesterly direction on Dodd Road, intending to pass through the area where Ohio Street intersects this through highway. He had just left the home of his parents at 860 Dodd Road located on the easterly side of the highway approximately 700 feet northeast of the scene. While there was a question of fact concerning the exact point of impact, it is undisputed that the front of the motorcycle struck the right front door of defendant's automobile at some point on the roadway north of the centerline of Dodd Road and west of the projected centerline of Ohio Street north. Defendant's vehicle came to rest near the northwest corner of Ohio Street north, facing northeast. The motorcycle came to rest adjacent to the front right side of defendant's vehicle. Plaintiff driver was thrown from his motorcycle and immediately after the collision was lying on the boulevard northwest of defendant's car near the hydrant shown on the diagram. He was rendered unconscious and suffered injuries to his person and property. This joint action for damages resulting from the injuries and for past and prospective medical expenses followed. Defendant, who suffered no personal injuries, denied liability and counterclaimed for damages to his automobile.

Ohio Street, both north and southeast of Dodd Road, is 30 feet wide. Dodd Road is 40 feet wide southwest and 36 feet wide northeast of the point at which Ohio Street intersects it from the southeast. The projected centerline of Ohio Street north extends to the centerline of Dodd Road at a point approximately 46 feet northeast of the point at which the projected centerlines of Ohio Street southeast, Dodd Road, and Hurley Street intersect. There are, however, no centerline markings on the pavement.

Testimony established that Anderson left the driveway of his home, turned onto Dodd Road, and proceeded in a southwesterly direction in a straight line in the right lane of travel. Defendant, who was returning from a shopping trip, proceeded directly across Dodd Road (more or less at an angle) from Ohio Street southeast to Ohio Street north with gradual acceleration to a speed of about 20 miles per hour at impact. There was a skid mark ending at about the point at which the motor-

cycle came to rest and beginning about 27 feet southwest thereof, the significance of which is not clear.

There is testimony that plaintiff driver (traveling about 25 miles per hour), upon seeing defendant about 60 to 70 feet distant as he began proceeding across Dodd Road, applied his brakes and traveled an additional 30 to 40 feet before colliding. The approximate point of defendant's position when he first saw the motorcycle is not clear from his testimony. Defendant claims that after proceeding from a stopped position at the stop sign, upon seeing plaintiff one-third of a block away, he hesitated a split second before directly proceeding from his position across the left lane of Ohio Street as projected into Dodd Road from the north, with the intention to return to his proper lane on Ohio as he continued north. He stated that he chose to continue and cut across the left lane because plaintiff driver gave no appearance of slowing down and this was the course of action least likely to result in a collision. He estimated plaintiff's speed at 35 to 40 miles per hour. His declaration that he came to a full stop before proceeding across Dodd Road is disputed. The testimony also created disputes as to the lookout and control exercised by each driver, the speed of plaintiff's motorcycle, and compliance by each party with his duty to yield the right-of-way to the other. The latter, of course, was dependent upon a determination of the dispute over which driver had the right-of-way.

The instructions were in general terms. The trial court did not outline to the jury the specific claims of negligence that each driver could urge against the other under the evidence. In addition to instructions concerning the common-law duty of each driver to maintain a proper lookout and exercise proper control, including the emergency rule, the court read certain provisions of the Highway Traffic Regulation Act. Under the instructions given, the jury was permitted to find defendant negligent either with respect to lookout, control, failure to yield the right-of-way by not stopping and remaining stopped in obedience to a stop sign or in starting his vehicle from a stopped position when such movement could not be made with reasonable safety, or in failing to drive upon the right half of the roadway of Ohio Street. The jury was permitted to find plaintiff guilty of contributory negligence either with

respect to lookout, control, excessive as well as unlawful speed, or failure to yield the right-of-way because of a forfeiture for excessive or unlawful speed or because defendant (having properly yielded the right-of-way) was entitled to proceed.

The jury returned a general verdict for the defendant without assessing damages. Because of the theory upon which the case was tried and submitted and the fact that defendant had counterclaimed for damages to his automobile, we must conclude under the facts here that the jury found both drivers negligent.

We have no difficulty with plaintiffs' assignment that the verdict is not justified by the evidence. We are satisfied that the instructions of the court were wholly consistent with the evidence and, contrary to plaintiffs' contention, the evidence justified the court in giving the jury the entire substance of the second paragraph of Minn. St. 169.20, subd. 3,[1] dealing with the duty to yield the right-of-way in obedience to a stop sign. Furthermore, we believe the court should have instructed concerning the emergency rule so that the jury could judge the conduct of either or both drivers by that rule if facts were found which warranted its application. Consequently, we conclude that there is ample evidentiary support to find each driver negligent in any or all respects permitted by the instructions and that the verdict cannot be assailed upon the ground that it is not justified by the evidence.

Our main difficulty is the problem presented by the court's refusal to grant plaintiffs' request that the jury be instructed regarding statutory requirements regarding making a left turn at an intersection, including the necessity of signaling and a proper approach, as embodied in § 169.19, subds. 1(2) and 4, and § 169.20, subd. 2.[2]

---

[1]"The driver of a vehicle shall likewise stop in obedience to a stop sign, as required herein, at an intersection where a stop sign is erected at one or more entrances thereto although not a part of a through highway, and shall proceed cautiously, yielding to vehicles not so obliged to stop which are within the intersection or approaching so closely as to constitute an immediate hazard, but may then proceed."

[2]§ 169.19, subd. 1. "The driver of a vehicle intending to turn at an intersection shall do so as follows:

* * * * *

The essential foundation required to give these requests any persuasive force is plaintiffs' argument that the physical layout of the highway required the court to hold as a matter of law that not one but two separate intersections were involved. They reason that it was necessary for defendant, in negotiating Ohio Street across Dodd Road, to turn right and thereafter left. In short, that a pronounced offset rather than a curve and recurve or a jog is produced by the joinder of these two highways. Significantly, neither a specific request to so instruct the jury was made nor was the statutory definition of an intersection requested or given to the jury.[3] Plaintiffs' argument was first urged at the hearing on the posttrial motion. We agree with plaintiffs that implicit in the court's refusal to read the statutes requested was a determination by the court that the area in which these vehicles might come in contact was one intersection. In refusing plaintiffs' request and in denying plaintiffs'

---

"(2) Approach for a left turn on other than one-way roadways shall be made in that portion of the right half of the roadway nearest the center line thereof, and after entering the intersection the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered. Whenever practicable the left turn shall be made in that portion of the intersection to the left of the center of the intersection."

§ 169.19, subd. 4. "No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in this section, or turn a vehicle to enter a private road or driveway or otherwise turn a vehicle from a direct course or move right or left upon a highway unless and until the movement can be made with reasonable safety, and then only after giving a clearly audible warning by sounding the horn if any pedestrian may be affected by the movement or after giving an appropriate signal in the manner hereinafter provided in the event any other vehicle may be affected by the movement."

§ 169.20, subd. 2. "The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard, but the driver, having so yielded and having given a signal when and as required by this chapter, may make such left turn, and the drivers of all other vehicles approaching the intersection from the opposite direction shall yield the right of way to the vehicle making the left turn."

[3] The pertinent portion of Minn. St. 169.01, subd. 36, provides: " 'Inter-

motion the court explained that under the evidence defendant was crossing the intersection and not making a left turn off Dodd Road into Ohio Street, and that an instruction covering the statutory duty in making a left turn[4] would be confusing since if a signal were given under the facts of this case it could indicate a left turn into Dodd Road or Hurley Street. The court further indicated that the change-of-course statute[5] would likewise be confusing because defendant was merely following the jog in Ohio Street and was neither turning from a direct course or moving right or left upon the highway.

The jury was informed of the statutory requirement to drive upon the right half of the roadway,[6] and this instruction is clearly consistent with the reasoning of the court. Although the briefs reflect an extensive effort on the part of both counsel to discover a case somewhere which would control the question of whether this unique intersection constituted one or two separate intersections, all of the cases cited are distinguishable on the facts.[7] We believe this approach is too narrow and provokes academic rather than realistic treatment.

In the final analysis the problem presented is not whether this is one or two separate intersections but is essentially one of giving to the jury understandable instructions on the rules governing right-of-way under the evidence peculiar to this intersection and this accident. It is true that in determining the applicable statute governing right-of-way the court was required to decide whether the physical layout created one or two separate intersections. However, this could not be accomplished by a simple reading of the statutory definition of an intersection, but also required a consideration of the location of the vehicles on the

section' means * * * the area within which vehicles traveling upon different highways joining at any other angle [other than right angles] may come in conflict."

[4]Minn. St. 169.19, subd. 1(2).

[5]§ 169.19, subd. 4.

[6]§ 169.18, subd. 1. "Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, * * *."

[7]Peterson v. Jewel Tea Co. Inc. 228 Minn. 521, 38 N. W. (2d) 51; Knight v. Richey, 363 Mo. 293, 250 S. W. (2d) 972; Pileri v. Saenger, 104 N. Y. S. (2d) 201.

highway, their intended course of travel, the manner in which vehicles on Ohio Street would normally pass over Dodd Road, and all the facts and circumstances disclosed by the evidence—all of which are necessarily involved in finally determining which of the statutory rules would best inform the jury concerning the duty each driver owed to the other to yield the right-of-way and would bring into focus the dispute concerning this issue. Cf. Chapman v. Dorsey, 235 Minn. 25, 49 N. W. (2d) 4.

We believe the court reached a correct conclusion in refusing plaintiffs' requests. While there can be instances where the offset of an intersecting highway creates two separate intersections, we are not persuaded that in this case it is sufficiently pronounced to warrant such a conclusion. In negotiating the jog in Ohio Street in compliance with the duty to use due care, defendant was required to yield the right-of-way by stopping in obedience to the stop sign and thereupon to enter and continue across Dodd Road only when such movement could be made with reasonable safety and with adherence to his duty to drive upon the right half of the street. After stopping and entering, defendant had a continuing duty to use due care in negotiating the intersection, which duty required him to slow down or stop and yield the right-of-way if necessary to avoid a collision with plaintiff driver's motorcycle. Plaintiff driver had an equal duty to yield the right-of-way if defendant had properly entered and was proceeding across Dodd Road and to reduce his speed to avoid a collision. Johnston v. Selfe, 190 Minn. 269, 251 N. W. 525. These reciprocal duties with respect to right-of-way were included in the court's instructions. To require defendant to negotiate the intersection in the manner claimed by plaintiffs would be to overlook the undisputed facts that defendant was neither intending to nor making a left turn but merely following the physical direction and course of Ohio Street. While it is arguable that two intersections were created, we believe that the statutes requested to be read would have been misapplied and would have detracted from the central claims each driver made out against the other. In trying motor vehicle collision cases it is common to have disagreement concerning the provisions of the Highway Traffic Regulation Act that may apply and that should be in-

cluded in the court's instructions. If every plausibly pertinent section is read, there is danger that the pivotal dispute or disputes will be submerged or obscured and thereby the effectiveness of final argument and the charge reduced to the point where the jury will more likely be confused than aided in focusing upon the central disputes of the parties.

We hold that the instructions, although general, did provide the jury with an understanding of the duties incumbent on these drivers under the evidence and that the provisions of the act requested to be read, although plausibly pertinent, would have been misapplied and have served only to confuse the jury where, as here, the record clearly supports a finding that both drivers were negligent.

Plaintiffs also assigned error claiming misconduct of jurors occasioned by the attempt of the mother of the minor plaintiff to converse with some jurors, and further, that the court erred in ruling on objections to the use of a discovery deposition on redirect examination by defendant's counsel. We have carefully considered plaintiffs' contentions and conclude that no errors were committed by the court. Recording the analyses compelling this conclusion would serve no useful purpose.

Affirmed.